## WALTER EARLES v. THE STATE.

### No. 3169. Decided February 8, 1905.

**1.—Murder In Second Degree—Change of Venue.**

See opinion for evidence which sustains the trial court in overruling defendant's motion for change of venue.

**2.—Same—Threat—Evidence.**

Where the threat of defendant was conditional and had no reference whatever to the transaction in which he killed the deceased, but directed to another transaction entirely, and was not directed against a class, so as to embrace the deceased, and not of such a malignant character as to embrace all persons within its scope, it was error to admit it in evidence.

**3.—Same—Evidence—Disconnected Transaction.**

Where the court admitted conditional threats of defendant, not embracing the deceased, for the purpose of showing the relations between defendant and a female, who did not seem to be involved in the difficulty which resulted in the homicide in such manner as that the defendant's attitude toward her could be proven, there was error.

**4.—Same—Certificate of Judge—Matter Not in Evidence.**

The trial judge was not authorized, in his certificate to appellant's bill of exceptions, to take judicial cognizance of matters and things not in evidence, to justify the admission of testimony against the accused.

**5.—Same—Right to Arrest—Charge of Court.**

See opinion for evidence held to be sufficient to have authorized the court to instruct the jury with regard to making an arrest of defendant for carrying a pistol, and which justified the deceased, who was an officer, to arrest the defendant before the homicide occurred.

**6.—Same—Charge of Court—Adequate Cause—Arrest Without Writ.**

Where there was evidence on a trial for murder that the deceased, an officer, arrested the defendant without a writ, for unlawfully carrying a pistol, just before the homicide occurred, and which resulted therein, the court did not err in charging the jury that such arrest would not afford adequate cause to reduce the killing to manslaughter. However, the court should have instructed the jury, in this connection, that if the arrest was made on that ground, and

deceased so informed appellant at the time, it would not afford adequate cause for passion. Brooks, Judge, dissenting.

**7.—Same.**

Where there was no evidence that deceased arrested defendant without a writ on the information of a credible person that the latter had committed a felony and was about to escape, the court erred in submitting a charge on such issue.

**8.—Same—Charge of Court—Adequate Cause—Illegal Arrest.**

See opinion for charge of court to the effect that if the defendant was unlawfully arrested and did not believe the arrest to be illegal he had no right to attempt to release himself, and in such case the fact of arrest would not be adequate cause, etc., which is held not to be the correct rule, and that an arrest which is illegal, without reference to the knowledge or belief of the party that it is illegal, may under the circumstances afford adequate cause. Brooks, Judge, dissenting.

Appeal from the District Court of Navarro. Tried below before Hon. L. B. Cobb.

Appeal from a conviction of murder in the second degree; penalty, twenty years confinement in the penitentiary.

While the case as stated in the opinion discloses the facts sufficiently to clearly show the issues involved, it may be added that the deceased had no warrant for the arrest of defendant, and that no prosecution for seduction was pending at the time. One of the State's witnesses who saw the killing testified that he observed the deceased and defendant as they passed down the street, going in the direction of the depot, deceased had hold of defendant's right arm with his left hand. The deceased was next to the wall and defendant next to the street—witness remarked to some one that deceased had defendant as a prisoner. Witness supposed it was his first arrest. As they went to step down the sidewalk, the defendant jerked loose from deceased, stepped a little in front of him, at the same time drawing his pistol, and fired at deceased, who immediately turned around from defendant and staggered toward the wall, put his hand up against the wall and then he went down on the sidewalk, and as he fell defendant advanced and fired the second time. Deceased fired at defendant as he sank down. Witness did not see deceased draw his pistol before he sank down. Witness heard six or seven shots, saw defendant shoot three or four times; defendant ran down the sidewalk toward the depot and turned the corner. Other State's witnesses testified substantially to the same effect.

The defendant went on the stand and testified substantially that he had made no threats as stated by State's witnesses. That he was in Corsicana on business and was suddenly taken in custody by deceased, whom he did not know at all. That he understood deceased to say that he arrested defendant for rape; that defendant called for the deceased's authority, whom he took to be a policeman, but the deceased produced no warrant or papers and admitted that he had none, but insisted that defendant must go with him; that he would put him in jail and the sheriff would attend to the rest, etc.; that defendant went with him along the sidewalk some distance, when he became so excited, exasperated and angry upon being thus treated, that he told the de-

ceased he would not go with him any further, when the latter gripped down on his arm; defendant jerked loose, drew his pistol and deceased threw his right hand up to his side; defendant thought the deceased was getting his pistol and that he could not wait, and he shot deceased; that he then ran down the sidewalk, turned the corner and threw his pistol away, ran across the railroad, where he was arrested. Defendant said he had not intended to shoot the deceased unless he attempted to draw his pistol, etc., and that he did not want to be placed back under illegal arrest, etc.

*J. T. Williams, E. E. Goree* and *Dexter Hamilton.*—On question of illegal testimony with reference to threats: Gains v. State, 53 S. W. Rep,. 623; Miller v. State, 31 Texas Crim. Rep., 609; Melton v. State, 83 S. W. Rep., 822. On question of illegal arrest: Goodman v. State, 4 Texas Crim. App., 349; Ross v. State, 10 Id., 455; Jones v. State, 26 Id., 1; Cortez v. State, 69 S. W. Rep., 536; Id., 83 S. W. Rep., 812.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty years; hence this appeal.

Appellant filed a motion to change the venue, which was contested. The court heard evidence pro and con, and overruled the motion. Appellant assigns this action of the court as error. We have examined the record carefully along this line, and find it as follows: Six witnesses testified outright to such a state of prejudice in Navarro County as that appellant could not expect to get a fair and impartial trial. Five of these lived in Corsicana, but stated they were more or less familiar with the people of the county. One lived at Angus. Thirteen testified to a condition of things which indicated some prejudice in the county against appellant, but all of them testified they believed he could get a fair trial in the county. Six of these lived in Corsicana, one lived at Blooming Grove; two lived at Frost; one at Richland, two at Re, one at Angus, and one at King Willow. On the other hand fourteen testified that no prejudice existed in Navarro County against appellant. One of these lived at Corsicana (he was chief of police); two at Spring Hill; two at Rice; two at Chatfield, one at Kendall, one at Richland; one at Blooming Grove; one at Frost; one at Drane; and two at Kerens. We are not informed by the record that the places enumerated constituted all of the towns and villages in the county. It will be seen from this statement that in the points outside of Corsicana, as testified to by the citizens of the various places, there is very little, if any, prejudice against appellant; and we do not believe the court erred in refusing to grant a change of venue. Renfro v. State, 56 S. W. Rep., 1013; Red v. State, 53 S. W. Rep., 618; Connell v. State, 8 Texas Ct. Rep., 127; Reeves v. State, 11 Texas Ct. Rep., 747.

On the trial appellant objected to the State's witness, Maggie Batson, testifying that in Wortham, Freestone County, Texas, ten days before deceased was killed by defendant, while she was living at defendant's house, she .wanted to go to Jap Stedman's, about three miles distant; that defendant objected to witness going to Stedman's, but was willing for her to go anywhere else, except Stedman's; that while witness and defendant were discussing it, witness told defendant, if he did not let her go to Stedman's she would have him arrested, remarking at the time that there were officers to protect her, and if he did not let her go she would have him arrested. That in reply defendant said he would kill any officer that entered his yard to arrest him. This was objected to on the ground that it was immaterial and irrelevant, and not a threat against deceased or any officer in Corsicana; that the threat was conditional that if any officer entered his yard to arrest him, for refusing to let Maggie Batson go to Stedman's; that the threat was conditional to wit: "to kill any officer who entered his yard to arrest him for refusing to let Maggie Batson go to Stedman's; that it was ten days before the killing of Maddux, and in another county, and had no reference whatever to deceased, and its only purpose would be to prejudice the jury against defendant. The court approves this bill with this statement: Stedman was an uncle of Maggie. The State's theory of the case was that defendant killed Maddux to escape from an apprehended prosecution growing out of his relations with her and this evidence was admitted, and the jury verbally instructed at the time to that effect, that it could be considered as showing the relation and attitude of defendant towards Maggie." We presume in this last expression, that the court did not intend to state he instructed the jury in his written charge, but merely he told them verbally how to consider said testimony. In our view, if the testimony was admissible at all, it was for another purpose than that stated by the court; that is, to show a threat or a malignant feeling on the part of appellant toward any officer attempting to arrest him, because we do not believe it was material or relevant to show the relation or attitude of defendant toward Maggie Batson. We do not understand the difficulty to have occurred about her, or that she was interested in it in such manner as that appellant's attitude toward her could be proven. The homicide, as we understand, occurred in an attempt to arrest and hold appellant in custody by deceased, and we are not even informed by the testimony that there was any charge against appellant on account of said Maggie Batson. Clearly the testimony was not admissible on the theory as stated by the court. Nor do we believe it was admissible on the proposition above referred to. The threat made was conditional and had no reference whatever to the transaction in which appellant killed deceased. We do not believe that the threat made under the circumstances, and directed to another transaction entirely, indicated such malignity towards officers, or such a determination not to be arrested on any charge by officers, as authorized its admission in this case. It would seem that

the judge in admitting the testimony on another ground took this view of it.

The State was permitted to prove by Tully Dean, that on the day defendant killed Maddux, while witness was riding with defendant in a laundry wagon in Corsicana, defendant told him that everything had been settled down at Wortham; he had paid a fine for carrying a pistol and the other two cases had been dismissed, and everything was settled, and he would die before he would be arrested again. Defendant objected to this testimony on the ground that the conversation was concerning some trouble between defendant and Jap Stedman, about ten days prior to the killing of Maddux; that the trouble was about Maggie Batson leaving defendant's house and going to Stedman's house, and was in no way against deceased, or a threat at all. The court explains this bill as follows: "Witness had testified that defendant told him of his trouble with Stedman at Wortham about Maggie, his being arrested for the same, and that he was then in Corsicana to get her and carry her away with him, and that he would get her or die. The State's view of the case was, that defendant killed Maddux because his relations with the girl had been criminal and he feared prosecution therefor; and it was a fact known to court, counsel and defendant that he had been indicted for rape in Freestone County at September court, but that fact was not admitted in evidence. I'm not sure it was right to exclude it, but all the evidence about his statements regarding Maggie and about his intention to resist arrest were limited by oral or written instruction so as that the jury could not regard them as threats against the deceased, but only as indications of his feelings and purposes towards the girl." We do not believe the learned judge was authorized to take judicial cognizance of the matters herein stated by him. He could only refer to such things as were in evidence. What we said in regard to the preceding bill is equally applicable to the admission of this testimony. We do not believe it was relevant to show, under the circumstances of this case, appellant's feelings and purposes toward Maggie Batson. Nor do we believe the testimony was admissible as a threat against deceased, or as a threat which may have embraced him as an officer, or as one attempting to arrest him. The threat had no reference to deceased, but was about another transaction entirely. We do not believe this testimony was admissible under any of the authorities. Under all the cases the threat must be directed toward deceased or embrace him in a class, or the threat must be of such a malignant character as to embrace all persons within its scope. Godwin v. State, 38 Texas Crim. Rep., 466; Strange v. State, 38 Texas Crim. Rep., 280; Holley v. State, 39 Texas Crim. Rep., 301; Fossett v. State, 55 S. W. Rep., 497.

It is shown by another bill of exceptions that appellant excepted to the following testimony. The State proved by Mrs. Alice Dean that on Saturday evening before deceased was killed by defendant on Monday, while she (Maggie Batson) and defendant were on the train going

from Wortham to Corsicana, defendant told her he intended to have Maggie; that he would have her or he would kill witness and Maggie, and then kill himself. Defendant objected to this testimony on the ground that it was immaterial and not in support of any issue in the case, and not a threat against deceased. That it was calculated to show defendant as a desperate and dangerous man, and therefore an attack upon defendant's character as a law abiding and peaceable citizen. The court says "this testimony was limited at the time of its admission to what it might show of the attitude of defendant towards the girl Maggie. It being contended by the sister that he was infatuated with her, and the jury were told that it was not evidence of a threat against deceased, and that it could be considered only as it tended to show the defendant's attitude towards said Maggie." As we have stated before, we do not think it was a material issue as to what appellant's state of feelings were toward Maggie. She was not at the homicide, nor engaged therein. Appellant was not trying to take her away when the officer took him in custody. We fail to see (as the learned judge appears to have apprehended) that it was at all important as to his state of feelings toward Maggie. If deceased had been authorized by any legal warrant or authority to arrest appellant on a charge which involved some crime against Maggie Batson, matters relevant to that crime could not have been acquired into, much less facts showing appellant's infatuation for Maggie, and still much less that Maggie's sister believed appellant was infatuated with her. But it does not appear from the evidence that deceased had any writ or authority to arrest appellant in regard to any offense involving Maggie Batson. Appellant had a right to resist an arrest or to free himself from an arrest made by deceased under the circumstances, which was recognized by the court in his charge. The truth in regard to any such matters was not a proper inquiry, and evidence relating thereto was calculated to injure appellant.

Appellant complains that the court improperly instructed the jury, if they believed that deceased had been informed by a credible person that appellant was carrying a pistol, and that he arrested him on said account, and appellant actually had on his person a pistol at the time, then that the arrest was legal. He insists that there was no evidence to support this charge. We have examined the records carefully on this point and it occurs to us that there is testimony tending to show that the arrest might have been made by deceased on this account. J. W. Nutt, State's witness, testified that Tully Dean and his wife told him that appellant had been out there the night before, and had threatened them; that he had a pistol. He testified that he told this to Maddux; that he told him defendant was in his shirt sleeves and had a pistol, and to arrest him and take the gun off of him; told him to keep a lookout for him, and if he went over to Dean's house and raised any disturbance to go over there and arrest him. J. W. Stewart says he told Maddux of defendant having the pistol. Deputy Sheriff Bradley testified he was looking for appellant between 4 and 5 o'clock on the 22nd; that he

was informed by Blackman (office deputy) that Walter Earles was wanted at Wortham for seduction; that he was informed by the Deans when he went there, that he might find appellant at Clark's steam laundry; that he came back through town, riding pretty fast; came down Collin street, and after crossing Beaton street, Charley Maddux (deceased) came out of Kirber & Cobb's; and witness "asked him if he had seen defendant. Maddux asked me if I wanted him. I told him I did. Maddux said he wanted him too. Then I went on to the laundry, and Maddux to the depot. I did not find defendant." Here it does not appear that deceased told Bradley what he wanted him for, and we do not recall that Blackman, or any other person, had imparted to deceased the alleged seduction matter. We do not recall that any State's witness testified as to what was said by deceased at the time he took appellant in custody at the depot. One witness stated he said something to him, but he did not hear the language; that he immediately took appellant by the arm, and they walked off together, and heard appellant say to Maddux, "Let me go by the oil mill, and I will show you." It is contended that this would dispose of the idea that he arrested him for carrying a pistol. It does not occur so to us. Nor does it make any difference that appellant's witnesses testified that they heard deceased at the time he took appellant in custody say he took him in custody for rape or seduction. We judge of this matter from the State's standpoint. We believe the facts are sufficient to have authorized the court to instruct the jury with regard to making an arrest of appellant for carrying a pistol. The facts are somewhat similar to those in Jacobs v. State, 28 Texas Crim. App., 79. Under that authority we believe the charge as to arrest for carrying a pistol can be sustained. Of course, it was proper for the court to instruct the jury as was done, if the arrest by deceased was on account of the alleged seduction, that it was illegal, because deceased had no warrant, and no other character of authority to make such arrest.

We believe the court was authorized to charge on murder in the second degree, and the objection made by appellant to the charge on that subject is not tenable. Nor do we think the court erred in instructing the jury that if the arrest was made on the ground that appellant was unlawfully carrying a pistol, such arrest would not afford adequate cause to reduce the killing to the grade of manslaughter. However, we believe the court should have told the jury in this connection that, if the arrest was made on that ground, and deceased so informed appellant at the time, it would not afford adequate cause for passion.

Appellant excepted to that portion of the court's charge which instructed the jury that deceased was authorized without warrant, to arrest appellant, when it was shown to him by satisfactory proof or the representation of a credible person, that the party arrested had committed a felony, and was about to escape, so that there was no time to secure a warrant for his arrest. There was no proof to this effect. Certainly none that appellant was about to escape.

We would not be understood as endorsing and approving the remainder of the charge of the court as given. We only treat those matters excepted to. However, we suggest on another trial, the court refrain from instructing the jury as follows: "If the defendant was unlawfully arrested and did not believe the arrest to be illegal, he had no right to attempt to release himself, and in such case, the fact of arrest would not be adequate cause for passion, as that expression occurs in the definition of manslaughter." We believe the authorities establish a different rule, and that an arrest which is illegal, without reference to the knowledge or belief of the party that it is illegal, may, under the circumstances afford adequate cause to reduce an unlawful homicide to manslaughter. Miers v. State, 34 Texas Crim. Rep., 161; Cortez v. State, 5 Texas Ct. Rep., 591.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.

BROOKS, JUDGE.—I agree to the opinion, except as to the last proposition involving adequate cause to reduce to manslaughter.