# IRA E. WILLIAMS v. STATE.

No. A-3522.  Opinion Filed July 16, 1921.
Rehearing Denied Aug. 5, 1921.
(199 Pac. 400.)

(Syllabus.)

1. **Appeal and Error—Discretion of Trial Court—Change of Venue.** The granting of a change of venue is by statute made discretionary with the court, and this court will not reverse the ruling of the trial court refusing a change of venue unless there has been such an abuse of discretion as will amount to a practical denial of justice.

2. **Venue—Change of Venue—Requisite Showing of Prejudice.** In order to warrant a change of venue by reason of prejudice existing against a defendant, it must be shown that such prejudice extended throughout the county generally, and it is insufficient to grant a change of venue upon a showing that impartial jurors cannot be procured from a portion of the county only.

3. **Judges—Disqualification—Mandamus.** Where a claim is made for any reason, as provided in section 5816, R. L. 1910, that the regular presiding judge is disqualified to try the case, and where upon presentation to the trial court of such claim of disqualification the court captiously or for insufficient reasons refuses to certify his disqualification, this court in a proper showing in a mandamus proceeding may compel him to do so.

4. **Appeal and Error—Discretion of Lower Court—Transfer of Causes.** The superior court, or the judge thereof, may in his discretion transfer to the district court any cause pending and undetermined therein which may be within the jurisdiction of the district court (Sess. L. 1915, p. 25); and a refusal to exercise such discretion will not be disturbed by an appellate court unless there was a clear abuse of such discretion, to the manifest prejudice of one or the other of the parties.

5. **Courts—Creation of Superior Court—Constitutionality of Act.** The act of the Legislature creating a superior court for Okmulgee county was not beyond the constitutional powers of the Legislature.

6. **Rape—Conviction—Sufficiency of Evidence.** A careful examination of all the testimony in this case shows that the verdict was amply supported by the evidence.

7. **Trial—Improper Argument—Duty of Court.** Where any attorney in the trial of a cause has been repeatedly admonished by the court to refrain from making argument to the jury concerning matters previously excluded by the court, or concerning matters not in evidence before the jury, and such attorney

pays no attention to such admonitions, it would be proper for the court to interrupt the argument and have the jury retire and reprimand or punish such attorney in some manner appropriate to the occasion.

8.     **Appeal and Error—Harmless Error—Improper Argument.** Certain remarks of the county attorney in his argument to the jury, relating to matters outside of the record, held improper; but under the circumstances disclosed by the entire record in this case, applying the provisions of section 6005, R. L. 1910, commonly known as the harmless error statute, the judgment of the trial court in this instance will not, for that reason, be set aside.

9.     **Evidence — Previous Good Character of Accused — Instruction.** The previous good character of a defendant may properly be considered by the jury in mitigation of the punishment, and a requested instruction to that effect should have been given.

Appeal from Superior Court, Okmulgee County; R. E. Simpson, Judge.

Ira E. Williams was convicted of the crime of rape in the first degree and sentenced to a term of 99 years in the state penitentiary, and he appeals. Affirmed, as modified.

F. P. Branson, E. M. Carter, H. J. Sturgis, L. H. Little, Moman Pruiett, Victor A. Sniggs, Crawford D. Bennett, and W. R. Bleakmore, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.  This is an appeal from a judgment against Ira E. Williams, convicted of the crime of rape in the first degree, rendered in the superior court of Okmulgee county on the 28th day of September, 1918. The facts implicating the defendant, plaintiff in error here, as shown by the record before us, are to the effect that Sue Bonds, the prosecuting witness, was reared on a farm in Arkansas, from where she came to Okmulgee to visit friends in August, 1917. That after she had visited there for three weeks or more, at the suggestion of her friends, she obtained employment in Okmulgee and remained there, engaged in various employments, until

the time she met defendant, July 23, 1918, the date of the offense charged. That at this time she was about 22 years of age, unmarried, not in the best of health, and weighed about 119 pounds. That during the winter Miss Bonds took a commercial course in a business college in Okmulgee, where she became acquainted with a Mrs. Cummings, who was instrumental in arranging a meeting between Miss Bonds and this defendant.

The record shows that the defendant, Ira E. Williams, was a man of about 36 years of age; that his early life was spent in Osage county, Mo., and that about the time he reached his majority he and the other members of his family came to Enid, Okla., where he was first employed as a clerk in a hardware store. Afterwards he became a traveling salesman, and for some time prior to the alleged offense he had been a traveling solicitor and salesman for the Shapley Hardware Company, with headquarters at Okmulgee. That the defendant had been twice married and was divorced from each of his wives. That he was a strong man, in good health, and weighed about 190 pounds.

That some time during the afternoon of July 23, 1918, the defendant took some whisky to the office of a Mr. Fagan, a friend and associate of his, and that they took several drinks, after which the defendant inquired of Mr. Fagan as to what he proposed to do that night. Mr. Fagan informed him that he had a date with his sweetheart, Mrs. Cummings; that defendant then inquired of Fagan whether she had a friend with whom he might make a date. They got into communication with Mrs. Cummings over the phone and she agreed to try to make the arrangement defendant desired with Miss Bonds, the prosecuting witness. After waiting a while they again called Mrs. Cummings, who reported that the lady refused to go, that she was busy sewing. In this conversation over the phone it was suggested by Mrs. Cummings that possibly if

Mr. Williams would call her up, he could make the desired arrangement, and she informed the defendant of Miss Bond's name and phone number.

On the Saturday evening before this Mrs. Cummings had told Miss Bonds that Mr. Fagan had a friend working in Mr. Black's office from the same vicinity in Arkansas where Miss Bonds had formerly lived, and that this friend wanted to meet some nice girl. Miss Bonds replied that she would like to meet him. There is evidence tending to show that when the defendant called Miss Bonds over the telephone she supposed that it was this gentleman from her home community in Arkansas. Miss Bonds finally agreed with the defendant that he, Mr. Fagan, and Mrs. Cummings should call at her rooms at the Mansion House at about nine o'clock, with the expectation that they would later take an automobile ride together. At the appointed time these three went to the Mansion House, where Mr. Fagan called Miss Bonds out on the porch and introduced this defendant to her. These three persons came there in a Ford roadster and invited Miss Bonds to join them for a ride; this she refused to do, stating that there was not sufficient room for four persons to ride in a Ford roadster, and asked if they didn't have a five-passenger car. Fagan then went to the garage and procured another roadster for Williams. There is evidence tending to show that this arrangement had been previously designed by the defendant and Fagan; that the defendant did not know how to drive a Ford car, and that Fagan had given the defendant instructions and demonstrations between the time he made the arrangement to call on Miss Bonds and the time he did call. After some conversation Fagan and Mrs. Cummings got into one roadster and Miss Bonds and the defendant into another, and the defendant drove out of the city on the streets and roads not much traveled. Fagan and Mrs. Cummings drove away in another direction and were not seen any more that night.

The testimony of Miss Bonds is to the effect that she did not know that the defendant was not the young man from her old home community until after he was introduced to her by Fagan. That immediately after getting into the car with the defendant he began to take liberties with her person, which she resisted and repulsed; that at the first opportunity, when the car was stopped, she got out and attempted to run away, but that the defendant overtook her and with his superior physical strength dragged her back into the car, and then proceeded to a more isolated spot, where he again stopped the car and she again got out of the car and attempted to escape. That he overtook her, caught her in his arms and forced her back against the front part of the rear fender, where, after a prolonged struggling and resistance, she was finally overpowered and he succeeded in ravishing her. Having accomplished his purpose, he took her back to the Mansion House where she roomed. Other witnesses testified that on her return she ran from the car to the room of her landlady, in a highly nervous and hysterical condition, and reported to the landlady what had occurred. With the assistance of others, she was undressed and put to bed. A physician was called, who at once made a physical examination of the female organs and a microscopic examination of the discharge there found, the results of which indicated recent sexual intercourse and a recently ruptured hymen, tending to show that she had hitherto been a virgin. Her clothing was soiled, torn and disarranged. Several witnesses testified that a day or two following her lower extremities were covered with many black and blue spots, the result of bruises lately inflicted.

The defendant admitted the act of sexual intercourse and claimed that Miss Bonds submitted to his caresses without protest, and that the sexual act was voluntary and agreed to by her for a money consideration.

This record is voluminous, containing more than 1900 pages. In the trial below the state was represented by five lawyers, and the defendant by a like number. The defendant claimed that the minds of the people of Okmulgee county were so inflamed against him that he could not have a fair trial in that county; that there was much prejudice against him, aggravated by inflammatory newspaper notoriety; that immediately after he had been arrested a mob collected, threatening summary vengeance; and that the court and the officers of the court were so prejudiced against him that he could not have and did not have a fair trial. Every dilatory plea and motion known to our practice was interposed in his behalf, the records of which comprise about 700 pages of this record. Among other motions was a motion for a continuance, in which it was urged that if the case could be postponed for a reasonable time the passions and prejudices of the people might subside. All of these motions, asking for a change of venue, a change of judge, a transfer to the district court, and continuance, were by the court overruled, and the defendant was forced to trial on the merits in the sixth week after the unhappy occurrence charged.

Numerous assignments of error have been interposed by the defendant as reasons why this judgment and sentence should be reversed. We have carefully examined the whole record and the points urged and argued in the briefs, reply briefs and supplementary briefs on file. In order that this opinion may not be extended to an unreasonable length we will notice only those we deem of vital importance or that may have operated to the prejudice of the defendant, grouped as follows:

First. The petition for change of venue should have been granted.

Second. The motion for a change of judge should have been sustained.

Third. The statute creating the superior court of Okmulgee county is unconstitutional and the court was without jurisdiction to try the case.

Fourth. The verdict is not sustained by and is contrary to evidence and the law applicable thereto.

Fifth. Misconduct of the county attorney in his closing argument to the jury.

Sixth. The court erred in giving instruction No. 15, and in refusing the requested instruction No. 14 in lieu thereof.

1. The application for a change of venue was heard on the 31st day of August, 1918, five weeks after the commission of the offense, and testimony of twelve witnesses was heard in support of the motion, among whom was a former judge of the district court of Okmulgee county and a State Senator.

The state resisted the motion for a change of venue by the oral testimony of six witnesses, including a registration officer, a physician from Beggs, and the mayor of the town of Morris. In addition to the above, there were filed by the state affidavits signed by 48 residents of various parts of the county, to the effect that the sentiment of the community was not such as would prevent the defendant's having a fair trial.

As might be expected in a controversy of this character personal beliefs of the witnesses, relating to the temper of the inhabitants of the county and whether or not the defendant could have a fair and impartial trial, were more or less conflicting and to a large extent mere matters of opinion. The testimony of Judge Carruthers was probably stronger in favor of the defendant than that of any other witness upon this issue. His testimony was that there existed strong local feeling that the defendant was guilty of the crime charged, and that he was not certain about the wisdom of trying the case in Okmulgee county; that if he were the presiding judge

he would be a little afraid that the Criminal Court of Appeals would reverse the case if it were tried in that county. The prejudice shown by the defendant to exist against him was confined to the vicinity of the city of Okmulgee and related, for most part, to the feeling that had existed immediately after the offense was committed; and this feeling was not so much directed against the defendant as it was against the crime of which he was accused.

The fact that the inhabitants of the city of Okmulgee were incensed and shocked by the revolting circumstances surrounding this affair, as gathered from newspaper articles appearing in the local press and the stories of the occurrence circulated in that community, would be complimentary to the citizenship of that town. If the mental attitude of the people was such that they refused to become excited or took no interest in a case where an innocent, unprotected girl had been brutally ravished, it would indicate that the citizenship of the community was indifferent as to whether the laws relating to violent and abhorrent crimes were enforced or not. Too frequently, where a defendant has a weak defense to the merits of the accusation and where he is represented by astute and able counsel, such defendant takes advantage of all the dilatory pleas and motions available in order to postpone and remove the case from time to time and from place to place, with the hope and expectation that some of the witnesses will die or remove from the state, so that when the trial on the merits is finally reached the state will be unable to make out its case, and so defeat the ends of justice.

The granting of a change of venue is by statute made discretionary with the court, and this court will not reverse the ruling of the trial court, refusing a change of venue, unless there has been such an abuse of discretion as will amount to a practical denial of justice. Starr v. State, 5 Okla. Cr. 440,

115 Pac. 356; Turner v. State, 4 Okla. Cr. 164, 111 Pac. 988; Smith v. State, 14 Okla. Cr. 348, 171 Pac. 341.

In order to warrant a change of venue by reason of prejudice existing against a defendant it must be shown that such prejudice extended throughout the county generally, and it is sufficient to grant a change of venue upon a showing that impartial jurors cannot be procured from a portion of the county only. In this case, the showing of prejudice made by the defendant related chiefly to the state of mind of the people in and about Okmulgee and was more or less conflicting, and where such conflicting evidence fails to show that such prejudice existed throughout the county, the court's finding thereon will not be disturbed on appeal. Johnson v. State, 1 Okla. Cr. 321, 97 Pac. 1059, 27 R. C. L. 816; State v. Gordon, Ann. 1918A, 442 (N. Dak.); State v. Casey (Nev.) 117 Pac. 5; Elias v. Ter. (Ariz.) 76 Pac. 605, 11 Ann. Cas. 1153; Earles v. State (Tex. Cr.) 85 S. W. 1.

2. The application for a change of judge or a transfer of the cause to the district court was, under the circumstances in this case, properly overruled. If the defendant knew or believed that the superior judge of Okmulgee county was disqualified, he should have proceeded as provided in section 5816, R. L. 1910, and if there were grounds existing that operated as a disqualification and the court refused to certify his disqualification, this court upon a proper showing, in a mandamus proceeding, could have compelled him to do so. The record here discloses that the court, throughout the trial on its merits, to the best of his ability accorded to the defendant every right to which he was entitled. In many instances, touching the admissibility of testimony, the exclusion of testimony, and in respect to other matters of procedure, where there was any doubt that doubt was generally resolved in favor of the defendant. This was as it should be, and we find no error under the second assignment.

3. The third proposition urged, that the superior court of Okmulgee county was without jurisdiction to try the case for the reason that the statutes creating this court are unconstitutional and void, is without merit. The constitutionality of the creation of superior courts for certain designated counties in this state has been upheld by the Supreme Court of this state and by this court. Leatherock v. Lawter, 45 Okla. 716, 147 Pac. 324; Diehl v. Crump, 72 Okla. 108, 179 Pac. 4; Ex parte Whitehouse, 3 Okla. Cr. 97, 104 Pac. 372.

4. It is next urged that the verdict is not sustained by the evidence. A careful reading and consideration of all the evidence in this case convinces us that no fair, impartial jury could arrive at any other conclusion than that of the guilt of the defendant. It would be neither edifying nor instructive to recite here at length the voluminous testimony in this case, and we deem it sufficient to say that the theory of the state was amply supported by credible evidence, both direct and circumstantial. We are not unmindful of the fact that testimony in cases of this character should receive the close and painstaking scrutiny of the court. This has been given in this case. We do not remember ever having examined a record in a case of this character where the evidence of guilt was so convincing as in this case.

5. Under the fifth assignment of error it is urged that this case should be reversed because the county attorney, in his closing argument to the jury, argued and discussed matters outside of the record, to the prejudice of the defendant. We quote from the record some of the remarks of which complaint is made:

"I say this, gentlemen of the jury, did you observe that when Mr. Pruiett started to make his argument that he addressed himself five or ten minutes to the court? He told the court he never saw a case so well conducted, with so few ex-

ceptions, as had been made in this case. Exceptions! That is true, there were but few exceptions made in this case. But, listen, there were a great many objections made, were there not? Who from? From this side of the table? If it were not for those objections, we would have thrown the curtains back, thrown the searchlight on this defendant's character—"

To the remarks above made the defendant objected, and the objection was sustained by the court in the following language:

"Don't state anything outside the record. The jury will consider nothing in this case but testimony of the witnesses and the law as given in the instructions."

Immediately after this admonition the county attorney stated:

"But what is the truth in this matter? I say to you, there were a great many objections made, and if it hadn't been for those objections the curtains would have been thrown back—"

Here another objection was interposed, and the court again admonished the county attorney to refrain from stating anything outside of the record. Closely following, the county attorney made the following remarks to the jury:

"You remember he stood before you, himself, and said that a young man who was unmarried in this state could do anything he wanted to; that he didn't have to be chaste, moral —that's what he said to you, that is one of the objections I had reference to; but at that place we could have thrown the curtains back and shown—

"By Mr. Sturgis: We insist on counsel waiting until we make our record. If the court pleases, I insist that counsel is discussing matters that have never been introduced here in evidence, and we ask that counsel be admonished not to continue, and that the jury be instructed not to consider the remarks of counsel.

By the Court: Objection sustained. Counsel for the state is admonished not to continue this line of argument, and the

jury are instructed not to consider the remarks of counsel, outside of the record in this case."

A little farther on in the record appears the following:

"What other extremities they were driven to to prove that this man had a good reputation, a reputation for being a moral, chaste character? No—

"By Mr. Sturgis: We except to that remark. His reputation as a moral, chaste character was never in issue, and we except to the remark of the county attorney and ask that the court admonish the jury not to consider it.

"By the Court: That objection is sustained; that was not in issue in this case, and the jury are now instructed not to consider the remark of the county attorney."

A little later the following statement was made:

"Yet they would not let us prove what his reputation was— they dared not—

"By Mr. Carter: We think that is unfair; that point has been ruled on by the court. We object to it as unfair.

"By the Court: The objection is sustained and the jury will not consider those remarks."

Closely following, this statement appears:

"Let's see what else. They asked this girl if she didn't go up to Muskogee and lay up with some other fellow over there. What for, men? Was that fair? I suppose it is fair on this side of the table—

"By Mr. Carter: What girl do you refer to?

"By Mr. Eaton: I am talking about Miss Bonds.

"By Mr. Carter: We except to that remark—we object to that as outside of the record, no insinuation was made as to that, she told how long she stayed up there.

"By the Court: Objection sustained. The jury will not consider that last remark.

"By Mr. Eaton: Your honor, I say that that is in the record.

"By the Court: The court has ruled, proceed."

In rebuttal the state sought to show that Miss Bonds, the prosecuting witness, was in Ft. Smith, Ark., on a certain day, by a Mr. Cope, a clerk of a hotel in that city. Mr. Cope came upon the witness stand in the presence of the jury, but before testifying an objection was interposed, touching the competency of the testimony about to be introduced. The jury was then excused and retired, and the testimony of this witness was heard by the court and by the court excluded. To this testimony the county attorney made reference in his argument to the jury as follows:

"What else have we? You saw Mr. Cope sworn here, appeared on the witness stand. Gentlemen, you heard—"

To this line of argument the defendant objected, and the court again admonished the county attorney as follows:

"Just a minute, Mr. Eaton; that objection is sustained and the county attorney will not discuss that question any further."

Later on the county attorney made these remarks:

"What about the register from the hotel at Ft. Smith? What about Mrs. Woods from Oklahoma City? We brought them to you. You wouldn't receive them after we brought them to you.

"By Mr. Pruiett: We object to that remark as highly improper, not based upon any testimony in this case. Just a minute, Mr. Eaton.

"By the Court: That objection is sustained. Gentlemen of the jury, you are admonished not to consider any remarks made by the county attorney in this case that is outside of the record."

It is needless to say that the remarks of the county attorney relating to matters outside of the record were im-

proper, and the county attorney must have known at the time he made them that they were improper. The court should at all stages of the trial exercise control over the attorneys and officers of the court, to the end that the trial may proceed in a legal and orderly manner; and where, as in this case, the county attorney has been repeatedly admonished by the court to refrain from making arguments to the jury concerning matters previously excluded by the court, and the county attorney pays no attention to such admonitions, it would be proper for the court—indeed, it may have been the court's duty—to interrupt the argument and have the jury retire and punish such attorney in some manner appropriate to the occasion.

Eliminating all consideration of the improper remarks of the county attorney, the conduct of the defendant in connection with the offense charged and proved was of a heinous, aggravated nature that would justify the jury imposing the extreme penalty of the law. The court, in every instance, admonished the jury to pay no attention to the remarks of the county attorney relative to matters not in evidence and we assume that, so far as possible, these admonitions were heeded. Whether the impressions received from such remarks unconsciously entered into the deliberations of the jury in aggravation of the punishment we cannot say.

If upon a careful examination and consideration of the whole record it appears that there was a reasonable doubt that the defendant was guilty of the crime charged, we might be inclined to reverse this case on account of the improper remarks of the county attorney; but, as before indicated, we believe beyond any doubt that, eliminating all such remarks, this jury or any other fair-minded jury would have found the defendant guilty. Whether or not the punishment assessed would be the same would be a matter of conjecture. Under the circumstances disclosed by this record, applying

the provisions of section 6005, R. L. 1910, commonly known as the harmless error statute, we decline to set aside the judgment of the trial court on the ground that the county attorney went outside the record in his closing argument to the jury.

6. It is next urged that the court erred in giving instruction No. 15, as follows:

"Gentlemen of the jury, evidence of the good character and reputation of the defendant in the neighborhood in which he has lived as being a peaceable, law-abiding citizen, has been introduced before you, and in that matter you are instructed that such testimony is competent and proper for you to consider, together with all the other facts and circumstances in the case, as bearing upon the defendant's guilt or innocence, and the probability or improbability of his having committed the crime with which he stands charged; and if after considering all the evidence in the case, together with that bearing upon his reputation, you entertain a reasonable doubt as to the guilt of the defendant, then it will be your duty to resolve that doubt in favor of the defendant and acquit him.

"On the other hand, if after a full and fair consideration of all the evidence in the case, you believe beyond a reasonable doubt that the defendant is guilty, then his previous good character cannot avail, and you should find the defendant guilty, notwithstanding his previous good character."

The instruction above quoted is the same as instruction No. 14 offered by the defendant, except that in the latter appears this additional final clause:

"But in that event you may take into consideration his previous good character in mitigation of punishment."

It has been held in several cases by this court that the character of the defendant may be considered in mitigation or aggravation of punishment. Prather v. State, 14 Okla. Cr. 327, 170 Pac. 1176; Morris v. Ter., 1 Okla. Cr. 617, 99 Pac. 760; Ernst v. State, 16 Okla. Cr. 507, 184 Pac. 793.

19—C. R. 11

This being so, the request for an instruction on this feature of the case should have been given, to be considered in the discretion of the jury, in mitigation of the punishment.

For the reasons stated in the opinion, the judgment of the trial court is modified, changing the term of imprisonment from 99 years to 25 years in the state penitentiary, and the judgment in all other respects is affirmed.

DOYLE, P. J., and MATSON, J., concur.