## A. C. MILLS v. STATE.

No. A-7362. Opinion Filed May 24, 1930.
(288 Pac. 496.)

366

 

Ross Rizley, R. B. Loofbourrow, and Clyde Miles, for plaintiff in error.

The Attorney General, and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Beaver county of the crime of manslaughter in the first degree, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of 30 years.

The evidence of the state was that defendant and deceased were farmers residing in Beaver county on adjoining farms. On the 3d day of July, 1928, deceased, who owned a combine harvester, began to cut the wheat of defendant. That a dispute arose between them over the use of a tractor to pull the combine, and later a more serious dispute because defendant had changed the governor on the combine. When defendant told the deceased about the change in the governor, the deceased became angry, stopped the combine, and ordered his hired man driving the tractor to pull the combine out of the field and quit the job. That defendant left the combine and hurried to his house, where he procured a revolver and started to return to the combine. That deceased had hitched his automobile to the water and oil truck and was driving out of the field

as defendant returned from the house. That defendant hailed the deceased, and that deceased stopped his car and got out and started to walk toward the defendant, and that defendant continued to walk toward the deceased. That when they were ten or fifteen steps apart, deceased had his hand up and was gesticulating, and defendant fired two shots from his revolver. That deceased ran some distance and then slowed down and walked some distance further, where he fell and died a short time thereafter. Defendant went back to the house, left his pistol, and went to the county seat to surrender. The sheriff not being there, defendant was taken to the office of the county attorney, where he made a voluntary statement of the events leading up to the killing. In this statement made by the defendant, the county attorney testified that the defendant made no claim that the deceased was armed or had a knife. The defendant claims that he was carrying his revolver with him that day because he was afraid to leave it at the house on account of his boy, who was mentally deficient, and because he thought he might be hijacked as he was returning from hauling his wheat. The defendant further claims that on returning from the house he hailed the deceased for the purpose of inducing him to go ahead with the cutting of the grain. That deceased cursed him, coming toward him with a knife in his hand, threatening to cut him, and that he shot deceased some ten steps away because he thought he was in great danger of his life or bodily injury. The record shows that the deceased was dressed in a pair of blue duck trousers and shirt and was not wearing any underwear; that all he had on his person was a pair of pliers in a back pocket of his trousers, a little, old, dirty knife in the left-hand front pocket and a pocketbook in the righthand pocket; that after deceased had been taken to his home and after he had died, these articles were taken out of his pockets; that the knife was

closed and was covered with oily grease and apparently had not been opened by deceased unless it had been to repair his tractor during the noon hour. There is very little dispute about the facts in the case except as to what actually transpired at the time of the killing. Two of the men were working not far away and could see what was going on, but could not hear because of the noise made by the tractors. Under the defendant's own statement he was not in such danger as would justify the taking of human life.

The defendant first contends that the court erred in overruling his application for a change of venue. The application was in the usual form and supported by the affidavits of several residents of the county who swear in substance to the effect that in their opinion the defendant cannot have a fair and impartial trial in that county; that the case has been discussed by many people in the vicinity where the crime was committed; that the discussions made have held the defendant in bad light and accused the defendant of having committed a cowardly act; that the defendant had formerly committed murder by cutting the throat of his father-in-law; and that by reason of the widespread prejudice against the defendant it would be impossible to have a fair and impartial trial. The state filed numerous counter affidavits, in substance to the effect that the persons who made the affidavits in support of defendant's application for change of venue were not rightly or reliably informed as to the condition of the minds of the citizens of Beaver county in their feeling toward the defendant; that some sentiment may exist in the vicinity where the offense is alleged to have occurred, but that such feeling is not general throughout the county; and that they believe a fair and impartial trial could be had. After hearing this evidence and argument of coun-

sel, the court denied the application, whereupon counsel for defendant took proper exceptions to such ruling. This court has uniformly held that applications for a change of venue are addressed to the sound discretion of the trial court, and that unless it is made clearly to appear that such discretion was abused this court will not reverse the case for the refusal of the trial court to grant the change of venue. Johnson v. State, 35 Okla. Cr. 212, 249 Pac. 971.

In order to warrant a change of venue by reason of prejudice existing against the defendant, it must be shown that such prejudice extended throughout the county generally, and it is sufficient to show that impartial jurors can be secured from a portion of the county only. Williams v. State, 19 Okla. Cr. 307, 199 Pac. 400.

The presumption of law is that the defendant can get a fair and impartial trial in the county in which the offense is committed, and the burden is upon the defendant who seeks a change of venue to establish his right thereto. Tegeler v. State, 9 Okla. Cr. 138, 130 Pac. 1164; Hamilton v. State, 38 Okla. Cr. 62, 259 Pac. 168.

In the case at bar, no abuse of discretion appearing in the record, the application for the change of venue was properly overruled.

The defendant next contends that the court erred in admitting certain alleged incompetent, irrelevant, and hearsay evidence. This assignment relates to the admission by the trial court of the evidence of Dr. Markley given at the preliminary examination, and in addition to the contention that said evidence was incompetent, defendant contends that no proper predicate was laid for the reading of the evidence as contained in the transcript filed in the clerk's office by the examining magistrate who had heard

the preliminary examination. The witness had made an examination of the deceased after his death and testified at the preliminary examination describing the location of the wounds, their course, and that these wounds were the cause of the death. This testimony was competent and relevant to the issue as to the cause of death, since it was incumbent upon the state to prove that the wounds inflicted by the defendant did cause death. The county attorney testified that the witness Dr. Markley was a resident of Texas; that two subpoenas were issued for Dr. Markley and that service could not be procured upon him; and that the county attorney had been unable to reach the witness over the telephone. There was no way for the state to compel the witness to attend the trial, and neither could the state take his deposition. It is not contended that the testimony read in evidence was not the testimony as given by Dr. Markley at the preliminary examination, but the contention is that it was not properly identified. The court reporter who took the testimony at the preliminary examination was also the court reporter who took the testimony at the trial, and the state could have identified the record by the testimony of the reporter himself, and the state would have done so except for the statement of counsel as follows:

"If that is the record that Mr. King made we have no objection. If Mr. King made it we have no objection to his reading it but there is no evidence here that it is."

Whereupon the court called attention to the fact that the transcript was certified to by the stenographer and thereupon overruled the objection and defendant's counsel saved an exception. And to the reading of such transcript of the evidence, defendant's counsel interposed the following objection:

"Now let the record show that the defendant objects to the reading of this testimony for the reason that the record has not been properly identified, therefore the evidence will be purely hearsay, incompetent, irrelevant and immaterial."

In the case at bar the killing is admitted, and self-defense is relied upon. There was no real issue presented by the testimony of Dr. Markley. The theory of the defense was that the defendant was justified in killing the deceased, not that he did not kill deceased, nor that deceased died from causes other than from the wounds which defendant admits he inflicted in self-defense. A sufficient predicate having been laid for the admission of the transcript and the evidence being competent, it was not error for the trial court to permit the same to be read to the jury. Pierce v. State, 35 Okla. Cr. 67, 248 Pac. 654; Weil v. State, 47 Okla. Cr. 88, 287 Pac. 752.

Defendant next contends that the trial court erred in treating the statement to the county attorney by the defendant, shortly after the homicide, as a confession of guilt. It does not appear from the record except incidentally that the court treated this statement as a confession. The court in instruction No. 4, after defining homicide, told the jury as an abstract proposition of law what a confession was and that the same was satisfactory and effectual proof of guilt where the same was corroborated by other facts and circumstances surrounding the case and where such facts and circumstances connect or tend to connect the defendant with the commission of the offense within the rules set forth in the instruction in addition to showing the commission of the offense or the circumstances of such commission.

This instruction was correct as an abstract proposition of law. There was some conflict between the evidence

of the county attorney and the defendant as to just what was said at the time the admissions were made. The court nowhere intimates in the instructions, nor is it intimated anywhere in the record, that these admissions made by the defendant were a confession. The admissions testified to by the county attorney and the defendant were clearly admissible against the defendant. Under these facts the instruction could not have been misleading to the jury nor have been prejudicial to the rights of the defendant.

The defendant further contends that the trial court erred in instruction No. 4, in that the trial court failed to define justifiable or excusable homicide. An examination of the whole charge given by the court discloses that the court did instruct upon justifiable or excusable homicide, and that the instructions given by the court when considered all together fairly stated the law of the case and were as favorable to the defendant as the facts in the case would require.

Defendant complains of other instructions and of the refusal of the court to give certain instructions requested by the defendant, but these contentions are all without merit. It is apparent from the record that the state should have filed an information against the defendant for murder instead of manslaughter in the first degree. This killing could not have been justified on the ground of self-defense. Deceased and defendant were friendly neighbors engaged in assisting each other in their work when the dispute arose which caused the killing. The defendant went to his house, procured the pistol, and returned to his field. Deceased was driving away from the premises when stopped by the defendant. The abusive language and threats of the deceased, even if made with gestures of the knife, at the distance defendant testified

deceased was from him, was not such provocation or danger as would justify the taking of human life.

For the reasons stated the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.