## JESSE HARRISON v. STATE

No. A-1771.   Opinion Filed June 13, 1914.

(141 Pac. 236.)

1.   **TRIAL—Conduct of Court—Interrogation of Witnesses.** While it
is the right of a trial judge to interrogate witnesses, when es-
sential to the administration of justice, yet the practice of so
doing, except when absolutely necessary, should be discouraged,
and when it appears that there was an abuse of discretion by
the trial court in interrogating different witnesses during the
trial of the case, which was prejudicial to the substantial rights
of the defendant, the judgment of conviction will be reversed.

.2.   **SAME—Conduct of Court—Expression of Opinion—Credibility of
Witnesses.** It is the duty of trial courts to refrain from allow-
ing their actions or words to indicate to the jury their opinion
of the credibility of any witness who testifies in the case upon
trial before them, or of the merits of any such case.

(Syllabus by the Court.)

*Appeal from District Court, Craig County;
Preston S. Davis, Judge.*

Jesse Harrison was convicted of robbery, and appeals. Reversed.

*W. P. Thompson* and *W. M. Simms,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen. (*C. J. Davenport,* Asst. Atty. Gen., of counsel), for the State.

DOYLE, J. This appeal is prosecuted from a conviction had in the district court of Craig county, in which the defendant was found guilty of robbery in the first degree, and his punishment was fixed by the jury at imprisonment in the penitentiary for a term of ten years. On the 6th day of November, 1911, judgment and sentence were rendered in accordance with the verdict. The defendant appealed from the judgment by filing in this court on June 17, 1912, a petition in error with case-made.

The information charged in substance that on or about the 15th day of November, 1910, the defendant, Jesse Harrison, did feloniously and with force take from the person of one Amanda Cansdall, and against her will, personal property, to wit, $21.50.

The only witness on the part of the state to the fact of the robbery was Amanda Cansdall. In substance her testimony is: That on the evening of the day in question she came on the train from Muskogee to Vinita and met the defendant near the depot, and he asked her if she was hunting a rooming house or hotel, and said that his sister was running a rooming house, and invited her to come there. That she went with him until they passed a livery barn, and she told him she did not believe she would go any further. That he took her pocketbook off her arm after a scuffle, and had it in his possession for a few minutes. That there was about $22 in money in the pocketbook, and when he returned it to her $21 of the money was gone. At the close of the county attorney's examination, the court asked the witness several questions.

Jake Smith testified: That he was a deputy sheriff, and about 9 o'clock that night the prosecuting witness phoned him that she had been robbed by Jesse Harrison, and he went and

arrested the defendant, and took him to Mrs. Cansdall, who identified him as the man who robbed her. That the defendant at the time denied any knowledge of the woman.

The defendant took the witness stand in his own behalf and denied that he took the pocketbook, and testified: That he was at the depot that evening with Henry Clark, looking at the people getting off the train that had stopped for supper at the new eating house, and some one in the car knocked on the window, and Clark said, "Somebody is knocking at you"; and Mrs. Cansdall, who was sitting in the chair car, beckoned to him and said, "I believe I know you"; and he went into the car and talked to her; and she said she would like to stop over at Vinita to-night, and get some beer and lunch, and have a good time; and he told her, "I am out for a good time with you"; and they got off the train; and she gave him $2 to get some beer. That they walked down the street, and he asked Henry Trott if he knew where he could get some beer, and he said no, and she said, "Let us go down by Old Swain Park"; and on the way there they bought a half pint of whisky. That they sat down on a bench in the park and drank the whisky, and he gave her his name and address. That he saw a cab across the street and went over to call it, and when he came back she was gone. That he went up the street to a pool hall and was arrested. That he did not take her pocketbook from her, or any money except the $2 she gave him. That he knew all her folks over on Big Creek and had known Mrs. Cansdall for ten years. After cross-examination by the county attorney, the court proceeded to interrogate the defendant regarding the matter.

Henry Trott testified that, on the night Jesse Harrison was arrested, he saw him get on the train and then get off with a woman, and later he met them down on the street near the International Bank corner, and they asked him where they could get some beer. Here counsel for the defendant was interrupted by the trial court for the purpose of permitting the court to interrogate the witness.

The ground of newly discovered evidence in the motion for new trial was supported by the affidavits of Mamie Z. Culver

and Alpha B. Culver, who depose that, while waiting in the county attorney's office, they met a woman who said "that she was the prosecuting witness against a boy named Harrison, who was charged with knocking her down and robbing her; that she further said that the boy was innocent of the charge, but that she would stick him for spite if she could."

The errors assigned are, in effect, that the verdict was contrary to law and the evidence; that the court erred in overruling the motion for a new trial; irregularity in the proceedings; and remarks made by the court in the presence of the jury during the progress of the trial, which were prejudicial to the rights of the defendant, and by which the defendant was prevented from having a fair and impartial trial.

A careful examination of the record leads to the conclusion that the judgment in this case cannot be permitted to stand, and this altogether without regard to the merits of the question of guilt or innocence of the defendant, and the only question which we think it necessary to consider arises upon the contention that the trial court abused its discretion in interrogating witnesses during the trial of the cause. While it is the right of a trial judge to interrogate witnesses when essential to the administration of justice, yet the practice of so doing, except when absolutely necessary, should be discouraged. Where, however, the questions asked are of such character as tend to indicate to the jury that the court is of the opinion the defendant is guilty, and that the questions are propounded for the purpose of fastening guilt on him, such procedure is clearly prejudicial to the substantial rights of the defendant.

The examination of the defendant by the court after the county attorney had closed his cross-examination was as follows:

"By the Court: Q. This woman had gotten on the train going west, and she pecked on the window and picked you out to have a good time, and you took her to Swain's Park; she gave you $2 to buy beer with; you had no trouble you stated; you still had her $2; she was standing there, and you told her you were coming back; you were going to see this cabman and see about the beer; how do you account for the fact that she

had you arrested and charged with this crime? What explanation do you make of that to the jury? A. I couldn't tell what her motive was in the matter. Q. Why do you think she would go to work and charge you with this crime? A. I don't know what she would do that for. She would have no cause to do anything like that; we had no words or falling out in the meantime."

We cannot escape the conclusion that the fair and impartial trial, to which the defendant was entitled, was prejudiced by the trial court's examination of the defendant, and that such examination constituted an abuse of discretion by the trial court that was highly prejudicial to the substantial rights of the defendant. Under our system of criminal jurisprudence, the jury are the exclusive judges of the weight and credibility to be given to the testimony of a witness, and the questions propounded by the trial court to the defendant were of such character as to constitute an improper invasion of the province of the jury. *Wilson v. Territory,* 9 Okla. 331, 60 Pac. 112; *Slater v. United States,* 1 Okla. Cr. 275, 98 Pac. 110; *Hicks v. United States,* 2 Okla. Cr. 626, 103 Pac. 873; *Reed v. State,* 5 Okla. Cr. 365, 114 Pac. 1114; *Koontz v. State,* 10 Okla. Cr. 553, 139 Pac. 842.

In the case of *Reed v. State, supra,* it is held that:

"It is the duty of trial courts to refrain from allowing their actions or words to indicate to the jury their opinion of the credibility of any witness who testifies in a case upon trial before them, or of the merits of any such case."

It is our opinion that the questions asked the defendant by the court were prejudicial to his rights, and prevented that fair and impartial trial contemplated by law.

The judgment of conviction is therefore reversed.

ARMSTRONG, P. J., and FURMAN, J., concur.