## LILLIE RIDGEWAY v. STATE.

No. A-4129.  Opinion Filed Oct. 13, 1923.
(218 Pac. 900.)

(Syllabus.)

1. **Witnesses—Court not to Question Defendant so as to Indicate Belief in Guilt.** Trial courts should carefully refrain from propounding questions to defendants on trial that may be construed as indicating that the court believes the accused is guilty, or from making any other statement susceptible of like import.

2. **Trial—Instruction not Erroneous as Raising Inference of Guilt.** Instructions examined and held sufficient.

3. **False Pretenses—Evidence of Reimbursement to Aggrieved Person Admissible in Mitigation.** In a false pretense case where evidence is offered to show that the aggrieved person has been fully reimbursed for all pecuniary losses, such evidence should be admitted, not to be considered in justification of the act, but to be taken into consideration in mitigaton of the punishment.

Appeal from District Court, Carter County; Thos. W. Champion, Judge.

Lillie Ridgeway was convicted of obtaining money by means of a bogus draft, and she appeals. Modified and affirmed.

Champion & George, for plaintiff in error.

The Attorney General, and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Lillie Ridgeway, plaintiff in error, in this opinion referred to as the defendant, was by information charged with the violation of section 2146, Comp. Stat. 1921, wherein it was charged that the defendant, with the intent to cheat and defraud the City State Bank of Ardmore, by means and use of a certain false and bogus bank draft of the sum of $1,010, executed by the Magnolia Petroleum Company, and payable to Ruby Ridgeway, falsely representing that she was the payee of said draft, did receive and accept payment of the amount named in said draft by means of such false representation.

The record discloses that Will Ridgeway, the husband of the defendant, was jointly informed against, and placed on trial with her; that in the course of the trial it was shown that Will Ridgeway had been adjudged incompetent, and that his mother had been appointed guardian of his person and estate, and the charge as to him was dismissed. The evidence shows that Will Ridgeway was an Indian, who had received an allotment, consisting of 320 acres near the Healdton oil field; that Will Ridgeway was married to the defendant on the 22d day of July, 1919, and that at the time of the alleged offense they were living in a home belonging to him in the city of Ardmore; that before he was adjudged incompetent he leased his lands to some oil company, from whom he was to receive advance royalties of $1,000 every six

months. That a few days prior to the offense the draft from the Magnolia Petroleum Company described in the information was delivered at defendant's residence through the mail; that the defendant took this draft to the City National Bank of Ardmore, and indorsed the name of Ruby Ridgeway thereon, and received from the bank the amount named in the draft. She was identified at the teller's window as "Mrs. Ridgeway" by a physician of Ardmore.

The defendant says that she assumed that this draft was in payment of the advance royalties due her husband from the oil company; that her husband was sick at the time, and she thought she had a right to cash the draft; that she knew that her husband's mother was his guardian, but that the guardian had refused to advance them any money, and that she cashed this draft in order to buy furniture and meet other expenses; that her name was Lillie Ridgeway, but that she assumed that the draft was intended for her.

The Monday following the cashing of this draft on Saturday, defendant and her husband purchased an automobile and drove to McAlester, where they remained with relatives for a period of about two weeks; from there they went to Ranger, Tex., and later to El Paso, where they sold the automobile, and were about to purchase railway tickets to return to Ardmore, when they were apprehended and arrested by the officers who brought them back to Ardmore.

Defendant says the judgment of the trial court should be reversed for the following reasons: First. Because she was prevented from having a fair trial by reason of the conduct of the trial judge in making certain interrogations in the presence of the jury, indicating that he was of the opinion that the defendant was guilty as charged; second, that the court erred in his instructions to the jury; third, that

the court erred in refusing to give an instruction offered by the defendant relating to her motive in cashing this draft; fourth, that the punishment assessed by the jury was excessive.

The part of defendant's testimony in connection with which the judge's remarks are complained of is as follows:

"Q. You and your husband, Will, lived together? A. Yes, sir; and the baby.

"Q. Prior to that time I will get you to state whether or not any one had been appointed guardian for Will?

"Mr. Mathers, County Attorney: Objected to for the reason that Will is out of the case.

"Mr. George: She signed the check, but if she did it without any criminal intent she isn't guilty of the crime charged. If the court rules that whether she signed the check is the only issue in this case, then she is guilty.

"The Court: Proceed, gentlemen. The court will rule as we get to it.

"Q. What was your answer to the last question about the guardian?

"Mr. Mathers: The court sustained the objection.

"The Court: That matter is immaterial. Gentlemen of the jury, this boy Will Ridgeway has a guardian, but he is out of the case.

"Q. Who is his guardian. A. His mother.

"Mr. Mathers: Objected to.

"The Court: Sustained.

"Mr. George: Exceptions.

"Q. About when was it you received this check? A. I don't know, I forget when I got it.

"Q. It was somewhere about the date shown here? A. It was in the spring.

"Q. You mean last fall? A. Yes, sir.

"Q. Now, where was your husband when you received this check? A. He was in bed; sick.

"Q. What did you do with the check when it came? A. He was due lease rent for six months, and I thought it was for that. I took the checks down and cashed them.

"Q. Why did you take these checks down and cash them? A. To get some money.

"Q. Why? A. Because his mother was guardian, and they wouldn't let me and Will draw checks.

"Q. You knew he had oil royalty and rentals coming in? A. Yes, sir.

"Q. Who collected them at that time? A. His mother.

"Q. As his guardian A. Yes, sir.

"Q. Were you and his mother on friendly terms at that time? A. No, sir.

"Q. State whether or not she was—

"Mr. Mathers: Objected to.

"The Court: Sustained.

"Mr. George: Exception. We expect to prove by this witness that she and Mrs. Ridgeway were at outs, not on good terms, and that Mrs. Ridgeway wouldn't let them have any money and that when this check came, in order to keep Mrs. Ridgeway from getting the money—

"The Court: Mrs. Ridgeway couldn't have let her have any money except by order of the county judge, you know that as a lawyer. Objection sustained.

"Mr. George: Note our exceptions, and exceptions to the remarks of the court. * * *"

Recross-examination:

"Mr. Mathers: The Magnolia Petroleum Company didn't owe you any money? A. He leased to the Magnolia in some way.

"Q. They didn't owe your husband any money for any oil? A. I don't know, he drew checks every six months.

"Q. Was that for rental on this lease? A. I don't know, he drew $1,000 every six months.

"Q. The Prairie didn't owe him any money? A. I don't know anything about that; I just know I thought it was our checks.

"Mr. George: You say you did get $1,000 every six months? A. Yes, sir; that come to our house.

"By the Court: You knew that was not your money, and not your husband's money at the time you cashed that check? A. No, sir.

"Mr. George: Defendant excepts to the remarks of the court."

Defendant complains that at the time the court asked the question, "You knew that was not your money and not your husband's money at the time you cashed that check?" the attitude and facial expression of the court was such as to leave the impression with the jury that the court believed that she cashed the draft with a felonious intent to defraud. The facial expression and the emphasis placed upon this question by the court are not in the record; we think the question propounded by the court was of doubtful propriety, but upon consideration of the other portions of the record we are constrained to hold that such conduct of the trial judge did not operate to the prejudice of the defendant. In passing, it may be proper to remark that trial judges should refrain from intimating to a jury, by word or action, their belief as to the guilt or innocence of the accused on trial. Jones v. State, 20 Okla. Cr. 233, 202 Pac. 187; Harrison v. State, 11 Okla. Cr. 14, 141 Pac. 236.

If this case were a close question upon the facts, and the question of criminal intent was in doubt from the whole

record, the court might hold otherwise, but other testimony in the record indicates that the defendant at the time the draft was presented for payment and cashed knew that she had no right to this money.

The court instructed the jury in part as follows:

"To the information filed against the defendants charging them with said crime they have entered their plea of not guilty, and the court has sustained a demurrer to the evidence as against the defendant Bill Ridgeway, for the reason that the testimony introduced by the state does not show he had anything to do with the passing of said bogus check. Whether he did or not I do not know, but that is not developed in the evidence. The defendant Lillie Ridgeway pleads not guilty, and you are instructed that this defendant, as are defendants in all criminal cases, is presumed to be innocent of the offense charged against her, until her guilt has been established by legal and competent testimony to your satisfaction beyond a reasonable doubt."

The defendant complains of the expression in this instruction that "The court has sustained a demurrer to the evidence as against the defendant Bill Ridgeway, for the reason that the testimony introduced by the state does not show he had anything to do with the passing of said bogus check," thereby raising an inference that the defendant there on trial did cash a "bogus check," within the meaning of the statute.

Instruction No. 5, following the above, is as follows:

"You are therefore instructed, gentlemen of the jury, that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant Lillie Ridgeway did in Carter county, and in the state of Oklahoma, on or about the —— day of October, 1920, willfully, unlawfully, fraudulently, and feloniously, with the fraudulent and felonious intent then and there to cheat and defraud, and by means and use

of a certain false and bogus bank draft, which she, the said Lillie Ridgeway, then and there well knew to be false and bogus, receive and obtain from the City State Bank at Ardmore, Okla., the sum of $1,010.90, or any other sum, good and lawful money of the United States of America, with intent to cheat and defraud said bank out of said money, then it will be your duty as jurors to convict the defendant of the crime charged against her, and fix her punishment at confinement in the state penitentiary for a term not exceeding seven years.".

In this connection the defendant requested and was refused the following instruction:

"Gentlemen of the jury, you are instructed that if you find from the evidence, or have a reasonable doubt thereof, that at the time the defendant Lillie Ridgeway indorsed and cashed the check mentioned in the information, that said defendant at the time in good faith believed that the check was the property of her husband, and that in so doing she acted without any intent of cheating and defrauding the City State Bank of Ardmore, or any other person or corporation in any way, then and in that event your verdict should be in favor of the defendant."

Construing the instructions given as a whole, we hold that the court committed no error in refusing the instruction requested. The jury were admonished that they must find and believe from the evidence, beyond a reasonable doubt, that the defendant, with intent to cheat and defraud, cashed the bogus draft, knowing the same to be false and bogus. This, in our judgment, was sufficient, and the refusal to give the instruction requested did not amount to a denial of the submission to the jury of defendant's theory of defense, namely that she cashed this draft without any evil or criminal intent.

The defendant next urges that the punishment assessed by the jury was excessive. The testimony of one of the bank-

ers indicates that the defendants reimbursed or made good to the bank its losses growing out of this transaction. Quoting again from the record:

"Q. This money has all been refunded to your bank, hasn't it?

"Mr. Mathers: Objected to.

"The Court: Let him answer.

"A. I can't say it has.

"Q. You can't say it has been paid? A. I can't say the money has been refunded; no, sir.

"Q. Your bank has been paid, hasn't it? A. So far as our records are concerned it has.

"Q. They also paid all expenses, court costs, and sheriff's costs and attorney's fees to Brown and Williams, $75?

"Mr. Mathers: Objected to.

"The Court: Sustained.

"Mr. George: Exceptions."

The court should have permitted the defendant to show that the bank had been fully reimbursed. Under our statutes the jury may, and in some instances are required to, fix the penalty. In doing so it would be proper for the jury to consider the nature of offense and the attending circumstances. Where the jury has a wide discretion in fixing the punishment, as in this case from one to seven years, they would be justified in taking into consideration the gravity of the offense, and the pecuniary loss suffered by the person aggrieved—not as justification for the offense, but in mitigation of punishment. 16 C. J. 1363; Dobbins v. State, 21 Okla. Cr. 403, 208 Pac. 1056; Williams v. State, 19 Okla. Cr. 307, 199 Pac. 400.

There were some extenuating circumstances connected with the commission of this offense, which considered together with the fact that the bank may have been reimbursed for its losses growing out of its commission, lead us to conclude that the judgment should be modified to the minimum of one year in the penitentiary, and the judgment of the trial court, as so modified, is affirmed.

MATSON, P. J., and DOYLE, J., concur.