W. J. BARNETT v. STATE.

No. A-9943. Nov. 25, 1942.

(131 P. 2d 496.)

J. D. Lydick, of Oklahoma City, and Williams, Cowan & Benedum, of Norman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for defendant in error.

JONES, J. The defendant, W. J. Barnett, was charged by indictment, duly presented and filed in the district court of Oklahoma county, with the crime of corruption in office, was tried, convicted and sentenced to serve five years in the State Penitentiary, and has appealed.

It is first contended that the trial court erred in overruling the demurrer to the indictment.

At the time the defendant was arraigned he filed what was styled "Motion to Quash and Expunge Instru-

ment Entitled 'Indictment' from the Record and to Exonerate Defendant's Bail." The motion was sustained by the district court of Oklahoma county. Upon appeal by the state upon a reserved question of law this court reversed the action of the district court and remanded the case for trial. State v. Barnett, 60 Okla. Cr. 355, 69 P. 2d 77.

Defendant petitioned the Supreme Court of the United States for a writ of certiorari, which petition was denied. Thereafter, a petition was filed in the district court of Oklahoma county for a writ of habeas corpus, which was denied. On March 2, 1937, and before trial date, a petition for writ of habeas corpus was filed in the Supreme Court of Oklahoma, and on June 1, 1937, an opinion was handed down denying the writ. 180 Okla. 208, 69 P. 2d 643. From this ruling the defendant appealed to the Supreme Court of the United States, and on December 13, 1937, the appeal was dismissed, Barnett v. Rogers, 302 U. S. 655, 58 S. Ct. 363, 82 L. Ed. 507.

Subsequently, the defendant, through his counsel, interposed a demurrer to said indictment in which was set forth four grounds upon which it was prayed that the action be dismissed. The county attorney filed a motion to strike the demurrer from the files for the reason that all of the matters and facts therein stated had been fully and finally presented in the motion to quash, and that said matters had been presented to the highest courts of the State of Oklahoma and to the Supreme Court of the United States and that in each and every instance the indictment had been sustained. The court took the demurrer and motion under advisement from April 19, 1938, to February 26, 1940, at which time the motion to strike was overruled and the demurrer, likewise, was overruled.

Several pages of the briefs of both the state and defendant are devoted to the proposition of law as to whether the decision in State v. Barnett, supra, is conclusive as to all questions raised by defendant in his demurrer.

While the two pleadings filed by the defendant are differently styled, they both are directed to the proposition that the statute under which the prosecution is instituted is so vague and indefinite that it may not be sustained; and, secondly, that said indictment wholly fails to state a public offense.

While we shall not hold that the former opinion of this court concluded the defendant from raising the propositions urged in his demurrer, we are of the opinion that Judge Doyle, in writing the former opinion in State v. Barnett, supra, gave full consideration to the proposition now urged, and even though some of the language in that opinion was dicta so far as the motion to quash then under consideration was concerned, that his reasoning was good and founded upon legal authority and applicable to the contentions raised by the defendant in his demurrer. For that reason, without further discussion of the demurrer but by reference to the former opinion of this court in State v. Barnett, supra, we are of the opinion that the district court correctly overruled the demurrer of the defendant filed to the indictment.

It is next contended that the evidence is insufficient to convict the defendant of any public offense, and particularly of the offense named in either section 9146, O. S. 1931, 6 O. S. 1941, § 18, or 9163, O S. 1931, 6 O. S. 1941 § 22, and that the trial court erred in refusing to instruct the jury to return a verdict of not guilty at the close of all the evidence.

The record herein covers approximately 1,300 pages. The prosecution depended entirely upon circumstantial

evidence to convict the defendant. We shall not undertake to give a review of the evidence nor comment upon the weight which should be given to the testimony of any witness for the reason that because of error, which will be hereinafter discussed, this case must be reversed and remanded and for that reason this court refrains from a discussion of the evidence, as the same might be used to prejudice the state or the defendant in future proceedings. It is enough to state that the evidence of the state was sufficient to make a prima facie case against the defendant and that even though many of the circumstances relied upon by the state for conviction were plausibly explained by evidence on behalf of the defendant, still the question of whom to believe remained one for the jury to determine under proper instructions.

It is further urged that the defendant was denied a fair and impartial trial because of the prejudicial misconduct of the trial judge.

In connection with this assignment of error, the defendant devotes the major portion of a 250-page brief. This assignment is directed chiefly at the action of the trial court interrogating two witnesses of the defendant at great length in the presence of the jury. Counsel for defendant contend that the trial judge, in propounding the questions, did so "with color in his face and by his demeanor showed feeling and resentment and by his tone of voice and his appearance clearly indicated to the jury that he did not believe the testimony which the witness had given."

The state's case centered around the testimony of one M. C. Trimble who had formerly been an assistant to the State Bank Commissioner. Much of the evidence of the defendant was directed at the testimony of Trimble and was for the purpose of showing a feeling of antagonism

between Trimble and the defendant and to further show that Trimble had purposely misplaced or destroyed records which had come into his possession as an officer of the State Banking Department, which records would have been valuable to the defense.

Trimble had taken a written statement from one H. H. Fisher, an employee of the Home Building & Loan Association at Shawnee, in which Fisher had stated certain facts relative to the transfer of some shares of stock which were the basis for the indictment upon which defendant was being tried. Fisher was placed upon the witness stand by the state, but when the written statement was presented he testified that the statement conveyed the wrong impression and that there were certain inaccuracies in the statement which were called to Trimble's attention before he signed it, but that Trimble threatened to place his loan company in receivership if he did not sign the statement as prepared. Before signing the statement it is undisputed by the testimony of both Trimble and Fisher that Charles E. Wells, a reputable attorney of Shawnee, was called by Fisher and the statement was discussed before Fisher would place his signature thereon. Wells testified that Trimble threatened to place the building and loan company in receivership if Fisher did not sign the statement. That he was attorney for the building and loan company and both he and Fisher were very desirous that the company be not placed in receivership, and for that reason he advised Fisher to go ahead and place his signature on the written statement although the statement as prepared, according to Fisher, was so worded as to give a wrong impression concerning the activities of the defendant, W. J. Barnett.

To further corroborate the testimony of Fisher and Wells the defendant used the witness Walter Nance,

who had been a supervisor of the building and loan division of the State Banking Department for many years. Nance testified that he was present at the office of the building and loan association in Shawnee making a routine examination when Trimble appeared and questioned Fisher. That Trimble then prepared a written statement for Fisher to sign, which Fisher refused to sign because of certain inaccuracies therein contained. That Trimble then threatened to place the building and loan association in receivership if Fisher refused to sign the statement. That Fisher called his attorney and consulted with him and did sign the statement and the witness Nance placed his signature as a witness on said statement.

The particular statement at which the testimony is directed was not a sworn statement but was a statement signed by H. H. Fisher and witnessed by Charles E. Wells and Walter Nance, although said statement at the beginning recites that the said H. H. Fisher was first duly sworn by Walter Nance, an auditor for the building and loan department.

The case-made shows that after the state and defense had concluded their examination of the witness, the trial court commenced an interrogation which covers four pages in the record. We have read over this examination and given it careful consideration and without detailing it at length it is our opinion that there was an excess of interference on the part of the trial court in his examination of this witness. The county attorney, in his cross-examination, had thoroughly covered the field and the conduct of the trial court probably had a bad effect on the defendant's case. At the conclusion of the court's interrogation the trial court made this statement:

"Of course, you understand, I don't believe a word you have testified to about these statements in controversy here. I don't think an officer would do that in this state, if he is honest about it, and I don't like for you to come down here and testify, an officer of this state, about a thing that carries the weight and integrity that that thing is supposed to carry with a jury and courts, and testify you handled the state's business in any such manner as that; that a man make a statement like that claiming it is not true, and let a man come to a prosecution on it, as an officer of this state; you ought not to do it. The fact of the matter is you ought to be fired from the position you have got and your commission taken away from you."

The record further reveals the following in connection with the court's examination of this witness:

"The Court: I think you ought to turn your commission in. Mr. Lydick (Attorney for defendant): The defendant objects and excepts to the remarks of the court. The Court: You are excused. Gentlemen of the Jury, the remarks of the court will not be considered by you in connection with the weight and credibility you give to this testimony. Mr. Lydick: We move the court now direct the jury specifically that the statement made by Your Honor shall not be considered by the jury. The Court: Which statement? Mr. Lydick: That he ought to give up his commission. The Court: Why? Mr. Lydick: That has no business in this case. I don't think the court should have said that. Q. (By the Court) Mr. Nance, do you as an officer of this state and as a notary of this state, intend to take any more acknowledgments or swear people to instruments in the face of the fact that you realize they contend that what they are signing is untrue? A. No. Q. You don't intend to do that. A. As I stated to the—here in my testimony, I didn't know whether that was true or whether that was not. Q. I thought a minute ago you didn't know whether you would do that or not. Now, if you say you won't do that I will withdraw my suggestion to you, but if as an officer of this state and holding a commission as a notary,

you don't know whether you will take acknowledgments of those who claim statements that they have made are untrue, or if there is any doubt in your mind, I still think you ought to deliver up your commission. Mr. Lydick: We except to the remarks of the court just made and move the court to instruct the jury they shall not consider the remarks made by the court. The Court: I have already instructed them to that effect. I am talking to this witness about a thing that has nothing to do with his credibility as a witness here. Mr. Lydick: If it has nothing to do with it I think you should strike it out of the record, and I so move. The Court: I don't have time to go out here after these lawsuits are tried, and tell an officer what I think he ought to do with his commission. Mr. Lydick: You haven't any right to tell him here. The Court: I did tell him here. Mr. Lydick: In the opinion of defendant's counsel, it is error. The Court: It is not going to prejudice the jury. They think the same thing I do about it, and I think any lawyer knows it. Mr. Lydick: No, they don't. You have no business telling them, in my opinion, under the law, and you had no right to."

W. W. Ringer was first presented as a witness for the state. Later he was recalled by the defense and testified concerning some records of an Ardmore bank which apparently were material to a correct determination of this case. Ringer was the employee of the State Banking Department who had charge of closing up the affairs of the American Bank & Trust Company at Ardmore. He testified that M. C. Trimble came to the bank and set aside all of the records which in any way involved any of the W. J. Barnett accounts for use in the litigation against Barnett. That after these accounts had been separated by Trimble the witness sent the records thus separated by express to the State Banking Department, which was headed at that time by Howard Johnson, Commissioner, who had succeeded the defendant Barnett.

The remainder of the records were destroyed pursuant to an order of the district court of Carter county. Ringer testified that the records which were picked out were selected by Trimble, and the defendant later showed by testimony of officials of the State Banking Department that the records sought by the defendant which were material to his defense were not included in the records which were sent to the banking department by Ringer. It was the contention of defendant that Trimble had caused the very records which would have conclusively proved the innocence of defendant to be burned.

After this testimony of Ringer was given, the trial judge proceeded to cross-examine him at great length. It was the contention of defendant, and they made a showing in their motion for new trial which was not disputed, that the judge, "in propounding his questions to the witness, did so very rapidly, occasionally pointing his finger towards the witness, and by his facial expression and apparent nervousness, displaying such color, feeling and dissatisfaction as to clearly indicate that he did not believe the witness." The examination by the trial court of this witness covers thirteen pages of the record. Some of the questions and answers are as follows:

"Q. You are a banker and an officer of this state, you know. A. Judge Arnold— Q. (Interrupting) Wait a minute. Lay off of that too. You see, I am an officer of this state and every once in awhile a duty falls on my shoulders, and sometimes it is my duty to see that other officers of this state tell what they know about something. * * * A. And there is another point, Judge, I am afraid the court is overlooking— Q. (Interrupting) I'm not overlooking anything. I think you know all about it. A. Well, I am telling you all I know about it. I certainly am. Q. You better. You are a witness for the State of Oklahoma here. A. That's right. Q. And I expect you to tell the truth and tell all you know.

A. I am telling it all. Q. Even if it is on you. A. That's all right. I will sure tell it."

The defendant complained particularly of the action of the trial court in questioning the witness from a copy of a letter given to the trial court by the assistant county attorney in the judge's chambers, which letter was never submitted to counsel for defense for their examination and which was not in evidence and the contents of which were unknown to defendant's counsel.

The defendant further contends that the conduct of the trial judge was so flagrant that the newspapers gave it big headlines in reporting the trial of the case and quoted the trial judge in the newspapers as stating that he did not believe some of the testimony given by the defendant's witnesses.

In the recent case of Little v. State, 72 Okla. Cr. 273, 115 P. 2d 266, it is stated:

"Trial courts should not in any manner, either through their actions or words, indicate to the jury their opinion upon the merits of the case being tried before them. Repeated interrogation of the witnesses by the trial court, which tends to indicate his opinion as to the guilt of the defendant, will constitute error. Whether such conduct is reversible error depends upon all of the facts and circumstances in the case."

In the case of Lacy v. State, 33 Okla. Cr. 161, 242 P. 296, it is stated:

"This court has had occasion on numerous occasions to consider assignments of error based on examination of witnesses and statements by the trial court, and it has been the uniform holding that, where it appears that the examination or statements of the trial court were of such character as to indicate to the jury the opinion of the court as to the guilt of the defendant or the credibility of the witnesses, such examination is prejudicial and reversible error. Harrison v. State, 11 Okla. Cr. 14,

141 P. 236; Reed v. State, 5 Okla. Cr. 365, 114 P. 1114; Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689; Hicks v. U. S., 2 Okla. Cr. 626, 103 P. 873; Stricker v. State [26 Okla. Cr. 141], 222 P. 704; Westfall v. State [30 Okla. Cr. 115], 235 P. 270; Talliaferro v. State [20 Okla. Cr. 57], 200 P. 1068."

In Little v. State, supra, we stated:

"It is the duty of the trial courts to refrain from in any manner, either through their actions or words, to indicate to the jury their opinion upon the merits of the case being tried before them. For that reason, except when it appears absolutely necessary to the administration of justice, the trial judge should not interrogate witnesses. Generally, the trial court will be motivated only by a spirit of fairness when he proceeds to ask questions of a witness, but often a lay jury is apt to confuse the actions of the court and become impressed that the court has an opinion upon the merits of the case, which he is trying to convey to the jury.

"It is a fundamental principle of our law that the jurors are the judges of the credibility of the witnesses, and the weight to be given to their testimony; and for that reason the trial courts cannot be too careful and guarded in their efforts to avoid allowing the jurors to discover the opinion of the judge as to the weight of the evidence and credibility of the witnesses."

Counsel for the state do not attempt to justify the examination made by the trial judge. It is rather an attempt on their part to minimize the possible effect of such examination on the jury. It is further insisted that even though such conduct was erroneous, it is only harmless error.

We cannot agree that this conduct was harmless error. This is not one of those cases where the proof of guilt is so overwhelming that a reasonable jury could have come to no other conclusion than that of defendant's guilt. The case was hard fought and there was ample

evidence in the record from which a reasonable jury could have concluded that the defendant was not guilty as charged in the indictment. We have heretofore stated that the evidence was sufficient to sustain the conviction, but we did not mean by that statement to infer that the guilt of the defendant was so conclusively proved that misconduct such as was indulged in by the trial court would be harmless error. As we view this record the evidence was such that a reasonable juror would not have been subject to criticism had he voted either guilty or not guilty. In cases such as this the average juror watches closely every act or word of the court for some hint as to what should be the verdict. It is because the case against the defendant was one which might reasonably have been decided either way that we have come to the conclusion that the examination of the witnesses for the defendant in the manner in which it was conducted was prejudicial to the rights of the defendant and such conduct as requires a reversal of the judgment of conviction.

There are many other assignments of error presented by the defendant. In view of the fact that this case may be retried, we shall only discuss those errors which might arise in future proceedings.

It is urged that the court committed error in the giving of instruction No. 5, which reads:

"Section 9146, Revised Laws of the State of Oklahoma, 1931, provides in part as follows:

" 'Any commissioner, assistant commissioner, secretary, examiner, or employee of the Banking Department, who shall be guilty of any corruption or misconduct in office, or who shall accept any gratuity, reward or present from any bank or bank officer, or shall take or accept any fee or compensation from any bank or banker during his term of office, shall be deemed guilty of corruption in office, and, upon conviction, shall be punished by

imprisonment in the State Penitentiary for a term of not less than one, nor more than ten years.'

"And section 9163 provides as follows:

" 'Any bank commissioner or assistant bank commissioner who shall neglect to perform any duty herein provided for, or who shall make any false statement concerning any bank, or who shall be guilty of any misconduct or corruption in office shall, upon conviction thereof, be deemed guilty of a felony, and punished in the manner herein provided, and in addition thereto shall be removed from office.' "

Counsel for defendant at the close of the evidence moved the court to require the state to elect under which statute the defendant was being prosecuted, which motion was overruled with exception. The two statutes involved are set forth in instruction No. 5, supra. All of section 9146, O. S. 1931, is not copied into the instruction and it takes a reading of the whole section of said statute to determine at what acts it is directed. The punishment for a violation of section 9163, O. S. 1931, supra, is set forth in section 9113, O. S. 1931, 6 O. S. 1941, § 235, which provides for punishment upon conviction by a fine not to exceed $1,000, or by imprisonment in the penitentiary not to exceed five years, or by both such fine and imprisonment. The trial court, while submitting both of said statutes in instruction No. 5, only submitted the punishment which is set forth by section 9146, supra, which provided for imprisonment in the penitentiary for a term of not less than one year nor more than ten years.

In Waldrep v. State, 74 Okla. Cr. 428, 127 P. 2d 860, it is held that where an act is made punishable in different ways by different provisions of the Code, an accused may be punished under either of such provisions and the county attorney may elect under which statute

to maintain the prosecution, following section 1774, O. S. 1931, 21 O. S. 1941, § 23.

The two statutes herein involved, insofar as they pertain to the offense charged against this defendant, are similar in wording, but different penalties are provided. The court erred in not requiring the county attorney to elect under which statute the prosecution was being maintained. In this connection the court also erred in setting forth both of the statutes under which the defendant could have been prosecuted, and then, in instruction No. 12, stating that the punishment should be by imprisonment in the penitentiary for a term of not less than one year nor more than ten years, as the punishment for a conviction under section 9163, supra, is less as is hereinabove pointed out.

Because of the apparent loopholes which existed under the old law, the Legislature in 1937 revised our Code and clarified the provisions of the various penal statutes affecting officers or employees of the banking department. This revised Code appears as Title 6, O. S. 1941.

Complaint is also made as to the giving of instruction No. 10, which is the instruction setting forth the theory of the defense. The first part of this instruction clearly sets forth the contention of the defendant. The latter part of the instruction is erroneous for the reason that it authorizes the jury to convict the defendant of an offense for which he was not charged by the indictment. The defendant presented no requested instructions. It is argued that since the court used five pages, explaining in detail what the state charged against the defendant, he should have given more in detail the contentions of the defendant. The trial court might possibly

have given a more extensive instruction on the theory of the defense, but, in the absence of any request therefor, there is no error in what is presented in the first part of instruction No. 10. Only the last sentence of instruction No. 10 should be eliminated.

We have only discussed those assignments of error which are necessary to a discussion to save a repetition of an argument on those questions in case of another trial.

For the reasons hereinabove given, the judgment of the district court of Oklahoma county is reversed and this cause is remanded for a new trial.

BAREFOOT, P. J., and DOYLE, J., concur.