### RICE v. STATE.

No. A-11258.    Nov. 29, 1950.

(225 P. 2d 186.)

Elmore A. Page, Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The plaintiff in error, Frank Emmett Rice, who will hereinafter be referred to as defendant, was charged by information filed in the district court of Tulsa county jointly with Warren D. Byers and George David Crittenden, with the crime of second degree burglary, second offense, and was, after obtaining severance, separately tried before a jury, convicted and his punishment assessed at 18 years in the penitentiary.   Appeal has been perfected to this court.

In petition in error 23 specifications of error are set out, but in brief defendant's case is presented under three propositions, all having to do with alleged errors of the trial judge. The state used some 16 witnesses, and the record is voluminous. The defendant did not testify or offer any evidence other than that of one of the two arresting officers, and being in support of defendant's motion to suppress certain evidence obtained by way of search of an automobile without a search warrant. Only a brief summary of the evidence seems to be required.

The record discloses that on the night of October 14, 1948, John Butler, of the Oklahoma City Police Department, telephoned the Tulsa Police Department that the mother of one "Lester Vernon" Rice had advised that her son and one Warren Dale Byers, both ex-convicts, were on their way to Tulsa driving a late model Buick sedan, gray color, with a Texas License, and that they were going to rob a safe at a place having a night-watchman. The message was received at 8:00 p.m., a record thereof was made and all police cars were alerted. Officers Griffith and Norman came on duty at midnight and were given the information. These officers worked the northeast end of Tulsa by car, and were on the lookout for the late model gray Buick sedan, with Texas tag. About 2:40 a.m., they got a message by radio that the Interstate Security Company, 17 East Eleventh street, Tulsa, located on the ground floor of the Longfellow Apartment Building, was being burglarized, and they started immediately for this place, and on reaching Tenth and Boston, about five minutes later, they noticed a car fitting the description given, being driven north on Boston about one and a half blocks from the scene of the reported burglary, and it turned to the left in front of them, and they by radio advised the oth-

er officers of their location, and the officers sounded their siren and stopped the Buick for investigation. In it they found the defendant and one Byers, who was driving, and being the persons involved in the warning message. They also found one Crittenden in the car. The officers advised the men that a burglary had been committed and that they had reason to suspect them. The car was searched and several punches, chisels, a sledge hammer, two wrecking bars, an ax, a 38-40 pistol and three pairs of gloves and some clothing were found. One glove had the right index finger pinched off at the tip and had blood on it. The pistol was found under the right front portion of the seat, but where it could be reached by the driver of the car, and under the portion of the seat where the defendant had been sitting. The pistol had blood stains on it.

On reaching the police station it was found that the defendant Rice had blood on his shirt, coat and pants, and that his right index finger had been injured and had been bleeding.

The nightwatchman at the Longfellow Apartment Building testified that a little past midnight he noticed two boys at the rear of the building in the alley, one in the shadow and one at the back door of the arcade way (being a hall running through the building from the alley) and when witness went to investigate the two men walked away, but witness identified the defendant as being the man who was at the back door. At about 2:30 a.m. witness came back to inspect and heard pounding inside that portion of the building occupied by the Interstate Securities Company. He had been particularly warned in the meantime to be on the lookout for burglars that night, and he noticed that a little transom window above the doorway to the Interstate

Securities Company offices had been opened and he started at once to telephone the police. He noticed the front door ajar, noticed someone glance out, and while telephoning had heard glass falling. On arrival of the officers, witness went with one of them to the rear door while others entered by the front door. They had to open the back door to let witness and the officers in; they found that the knob had been knocked from the safe and that the lock had been torn out of the front door, and the burglars had departed.

There was a table against the wall and under the transom through which the burglars apparently entered the building, and a piece of brown paper partially covered the table, and there were rubber shoe heel marks on it. There was also some blood on the table, and a portion of the glass pane of the open transom had fallen to the floor and shattered.

Harry Stege, Superintendent of the Criminal Laboratory, Tulsa Police Department, testified that he went to the office of the Interstate, made an examination for fingerprints, found none, but did find traces of blood on the knob and front of the safe and on the inside of the front door, that had apparently been pried open from the inside. Mr. Stege and his assistant also took paint samples from the safe and front door from points where a sledge hammer had apparently been used on the safe and a wrecking bar on the door. The paint on the safe was of green texture and that on the door was white enamel. Green paint was found on the sledge hammer and white enamel on the wrecking bar, all found in the car occupied by the defendant and his companions at the time of the arrest about five minutes after the nightwatchman gave the alarm on hearing pounding of metal against metal in the Interstate Securities Company of-

fice. One of the wrecking bars found in the car had white enamel paint on it and the bar was found to fit in the door jamb where there were marks made in prying the door open. The bar exactly fitted into the depressions.

Miss Harriett Little, chemist, employed in the Stanolind Oil & Gas Company Research laboratory, and in charge of the Spectograph Laboratory, tested the green paint from the safe and that from the sledge hammer in question and found the paint to be the same. This was also true as to the white enamel from the wrecking bar and from the front door.

Fred Hefner testified that he roomed in the Longfellow Apartment Building and that shortly after midnight on the morning of October 15, 1948, he started to his apartment, going back next to the alley to go upstairs; that he observed two men in the alley and saw the defendant bareheaded and pushing on the back door to the arcade entrance. Witness was within ten feet of the defendant. His description of the way defendant was dressed coincided with that given by the nightwatchman witness. The second man had hollered at witness to go back and as a car light shone on this man witness observed something shiny in his hand and witness got back and got into his car where he had a shotgun, and later drove into the alley, but defendant and his companion were gone. The description of the way the two men were dressed coincided substantially with the way the officers testified these men were dresssed at the time of their arrest.

The shoe heel prints from the shoes of the defendant corresponded in some five important details with some of the shoe heel prints found on the brown paper

taken from the table under the transom where entrance to the building in question had apparently been made.

It was brought out that the defendant theretofore, on the 9th day of October, 1942, had been convicted of robbery with firearms in the district court of Tulsa county and sentenced to serve a term of life, and on the 3rd day of October, 1935, had been convicted in the same court of second degree burglary and sentenced to serve a term of ten years. The prior convictions shown were all appealed and are reported as: Rice v. State, 60 Okla. Cr. 398, 64 P. 2d 1240; Ex parte Rice, 75 Okla. Cr. 307, 131 P. 2d 131; Rice v. State, 80 Okla. Cr. 277, 158 P. 2d 912; Rice v. State, 83 Okla. Cr. 409, 177 P. 2d 849, and Ex parte Rice, 83 Okla. Cr. 425, 177 P. 2d 857.

There was much other testimony and from many witnesses, but the above is a summary of the most pertinent evidence admitted.

Counsel first contends that through suggestion to the assistant county attorney and by questions asked the witnesses, the court manifested bias and prejudice in favor of the state, and that defendant's rights were thereby prejudiced. He cites the case of Barnett v. State, 75 Okla. Cr. 340, 131 P. 2d 496, 497, in which case is cited a number of cases supporting the principle of law therein announced, and being:

"Trial courts should not in any manner, either through their actions or words, indicate to the jury their opinion upon the merits of the case being tried before them. Repeated interrogation of the witnesses by the trial court, which tends to indicate his opinion as to the guilt of the defendant, will constitute error. Whether such conduct is reversible error depends upon all of the facts and circumstances in the case."

This court has uniformly adhered to the above principle of law. The difficulty, of course, is in the application. It will be helpful to read and study the facts in the number of cases cited in the above opinion, and where the rule has been applied. We have examined the voluminous record carefully to determine whether or not the trial judge actually by the questions asked the state's witnesses, or through his actions, indicated to the jury his opinion of defendant's guilt. The trial judge did ask a number of questions of various witnesses, but the manifest purpose seems to have been to clarify the testimony. A diagram of the floor plan of the Longfellow Apartment Building, particularly of the location of the Interstate Securities Company offices therein, including the "arcade" or hall had been submitted; a number of expert witnesses testifying to technical matters were questioned in instances, and the court did caution the county attorney where he was overlooking the actual introduction of exhibits where the same had been identified, but where there had been interruptions. The jury was entitled to all the enlightenment at hand for whatever it might be worth one way or the other. We do not discover bias or prejudice in the conduct of the court. And, at all events, a careful review of the evidence, pertinent portions of which we have heretofore summarized, forces the conclusion that by reason of the evidence establishing defendant's guilt, the questions and remarks of the trial judge to which counsel objects could not possibly have influenced the verdict of the jury.

Counsel next contends that the court committed reversible error in admitting in evidence the 38-40 pistol found in the car in which defendant and his co-defendants were riding at the time of the arrest. He argues that it was not shown that a pistol was used in the per-

petration of the burglary. Overlooked is the fact that the pistol was found under the car seat where defendant was sitting five minutes after the burglary when he was arrested; that defendant's right index finger had been injured and had been bleeding and that the pistol had blood on it, as did the right glove, and various items of his clothing, all indicating that defendant had been handling the pistol. All these circumstances were matters to be considered by the jury, though incidental only in the within case by reason of the fact that the accused was not charged with armed robbery, but with burglary.

Finally, counsel argues that the court "gave undue prominence to the minds of the jurors to the fact that the defendant had previously been convicted of robbery with firearms and second degree burglary." He complains because the court mentioned this in stating the issues involved. This was, of course, necessary as it constituted an allegation in the information.

Complaint is made because the fact of previous convictions was mentioned in instructions Nos. 6 and 8. In instruction No. 6 the court advised the jury that the previous convictions of the defendant, if the jury should find beyond a reasonable doubt that there were such convictions, should not be considered in determining the guilt or innocence of the defendant but only in determination of the punishment in case they should find the defendant guilty. It would have constituted ·error had the court not limited the purpose for which the evidence was to be considered.

Instruction No. 8 had to do with the extent of punishment to be inflicted in case of conviction, and under the settled law in this jurisdiction, it was necessary that reference be made to the question of former convictions.

The principle involved is discussed in a number of decisions rendered by this court, and which may be referred to for detailed treatment. See Carr and McGlasson v. State, 91 Okla. Cr. 94, 216 P. 2d 333, and Tilghman v. Burns, 91 Okla. Cr. 359, 219 P. 2d 263, and cases cited.

Finding no prejudicial error, the case is affirmed.

JONES, P. J., and BRETT, J., concur.