**CORDRAY v. STATE.**

No. A–11905.

Criminal Court of Appeals of Oklahoma.
March 10, 1954.

of such a serious nature that it almost caused the death of Hair. The shooting occurred near the Car Hop tavern at Ada.

In connection with the first assignment of error pertaining to the refusal of the trial court to instruct on the law of self-defense, the Attorney General concedes in his answer brief that the instruction requested by the defendant, although not a model, was sufficient to call the matter to the attention of the court and "it would have been the duty of the court to have instructed upon that issue if the evidence had been sufficient to raise the same.' We further concede that the instructions given by the court did not bear upon the question."

I. Jake Blevins, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant John Cordray was charged by an information filed in the District Court of Pontotoc County with the crime of assault with intent to kill, a second 'and subsequent offense; was tried, convicted, and, pursuant to the verdict of the jury, was sentenced to serve 18 years in the penitentiary and has appealed.

The following assignments of error are presented: First, the court erred in refusing defendant's requested instruction pertaining to self-defense. Second, the court erred in failing to instruct the jury that the evidence of previous conviction should not be considered in determining the guilt or innocence of the defendant but could only be used for the purpose of determining the punishment in case they found from other evidence beyond a rea-. sonable doubt that defendant was guilty. Third, the court erred in failing to give an instruction on lesser included offenses. Fourth, the verdict was excessive.

The undisputed evidence was that on May 18, 1952, the defendant shot one Garland Hair in the abdomen, which wound was

It is the contention of the State that since the defendant did not testify, there was no evidence to show that the person who was assaulted committed any act of aggression or attempt to injure the defendant, or that accused was acting in self-defense. If there was a showing by any evidence, direct or circumstantial, that the accused acted in self-defense, he would be entitled to have the jury instructed on that issue. Ridinger v. State, Okl.Cr., 267 P.2d 175. By statute it is provided:

"To use or to attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:

\* \* \* \* \* \*

"3. When committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense." 21 O.S.1951 § 643.

Only three witnesses testified to the facts surrounding the alleged assault.

Garland Hair testified that he and Harmon Wilson were in the Car Hop tavern

drinking beer and the defendant came into the tavern and drank some beer with them; that later the defendant left the tavern; that Hair walked out of the tavern and saw defendant talking to Mr. McElroy, the owner of the tavern; that he asked what was wrong and the defendant said, "None of your business." That he told defendant he would make it some of his business; that defendant told him to go across the street; that he went across the street, thinking that defendant would come over and they would fight it out, but when defendant came by in his automobile, instead of stopping and getting out and fighting with his fists, defendant pulled a pistol and shot Hair.

Hair admitted on cross-examination that he had served a term in the penitentiary for forgery and had also been convicted for violations of the liquor law in Pontotoc County.

R. K. McElroy testified that he was the owner of the Car Hop tavern; that Garland Hair, Harmon Wilson, and the defendant, John Cordray, drank some beer in his establishment on May 19, 1952; that he saw John Cordray leave his place of business and shortly thereafter, Garland Hair also left the tavern; that about five minutes later he went over to the juke box near a double window to play the juke box and looked out the window and saw defendant Cordray sitting in his automobile and Hair was standing by the car; that he could tell something was wrong by the actions of the two men, so he went outside to persuade them to stop their difficulty. That he walked up to the car, told Hair to return to the tavern, and asked Cordray to leave. That Cordray said, "I respect you and your place and I will go without giving you any trouble." That Hair spoke up and said, "I respect you as much as he does," and Hair further said, "I will see you across the road, John," and Hair then walked across the road. That Cordray started his automobile and drove it around the building to enter the highway going south towards the City of Ada; that he was driving slowly when he came

to where Hair was standing; that the witness could not see exactly what occurred because the automobile was between him and Hair, but it appeared as the automobile reached Hair, Hair reached over for the car handle and McElroy heard two shots fired and saw Hair fall. That the defendant then speeded up and left.

Jimmie Aynes testified that she was employed at the Car Hop tavern waiting on cars on the outside of the tavern on May 19, 1952, at the time Garland Hair was shot. That shortly before Hair was shot, John Cordray came out of the tavern and entered his automobile and started his motor. That he motioned to her and she went over to his car and was talking to him when Garland Hair came out of the tavern and walked up to the car; that Hair appeared to be mad, and Hair told defendant not to leave or he would come looking for him; that Hair had a knife in his hand. That Mr. McElroy came out of the tavern about that time and she then walked away from the Cordray automobile; that she saw Mr. McElroy talk to the parties and then Garland Hair walked over to the highway and was standing there on the road when defendant turned his car around and started to the highway; that defendant slowed down for the traffic on the highway. Jimmie Aynes was not looking at the cars at the time the shots were fired but did hear two shots fired.

The defendant did not testify and no other witness testified about any of the facts surrounding the alleged assault. These facts present a very close question as to whether there was sufficient evidence to require the trial court to give an instruction on self-defense which was requested by counsel for the accused. In this connection, the record shows that at the commencement of the trial, after the county attorney had made his opening statement to the jury, counsel for the defendant elected to make his statement also at that time and in the opening statement of counsel for the accused to the jury, he stated that the proof would show that Hair was the ag-

gressor and that the defendant acted in self-defense. With this claim of self-defense interposed at the commencement of the trial, it is our conclusion that the court should have given a requested instruction on self-defense as there is some evidence that the person who was assaulted might have been the aggressor and brought on the difficulty. These facts were that the defendant left the tavern peaceably and started the motor of his automobile and was pursued by Hair and that Hair had a knife in his hand and, according to Mr. McElroy, Hair made a motion to grab the handle of the car as it was passing him at the time the shots were fired. Hair himself testified that he walked across the road, thinking the defendant would come by and they would fight it out. We can readily see that the jury might not have been impressed that the accused was acting in self-defense, but that was his contention and since there was some evidence, although slight, to support his theory, he was entitled to an instruction submitting such issue to the jury.

■ As to the contention that the court erred in failing to instruct on lesser included offenses, we cannot find in the record any request for such instruction and in the absence of a request, we do not believe it constituted fundamental error under the facts of the case for the court to refuse to instruct on assault with a dangerous weapon and assault and battery.

There is substantial merit to the proposition that the court did not properly instruct the jury as to the admission of the evidence as to another alleged offense.

■ It has been many times held that the evidence of another offense where charged in the information may only be considered by the jury for enhancement of the punishment after defendant has been found guilty, and may not be considered in determining the guilt or innocence of the accused. Rice v. State, 93 Okl.Cr. 86, 225 P.2d 186; Smith v. State, 78 Okl.Cr. 375, 148 P.2d 994; Long v. State, 77 Okl. Cr. 174, 140 P.2d 600; Johnson v. State, 79 Okl.Cr. 71, 151 P.2d 801.

■ In Rice v. State, supra [93 Okl. Cr. 86, 225 P.2d 187], it was held:

"Where accused was charged with the crime of Second Degree Burglary, Second Offense, it was proper under the habitual criminal act, Tit. 21 O.S.A. § 51, for the court in stating the issues to set out the allegations as to the previous convictions; and it was not only proper but mandatory that the court further in the instructions advise the jury that the previous convictions of the defendant, if the jury should find beyond a reasonable doubt that there were such convictions, should not be considered in determining the guilt or innocence of the defendant, but only in the determination of the punishment in case they should find the defendant guilty. And it was further necessary in the instruction with reference to the extent of the punishment to be inflicted in case of conviction, that reference be made to the question of former convictions, and such instructions being mandatory where information filed under the habitual criminal act, the contention that such tended to give undue prominence to the fact of former convictions is without substantial merit."

The law pertaining to the evidence of other offenses should be clearly stated to the jury as sometimes a jury, where not properly instructed as to the basis for the admission of the evidence of other alleged offenses, might be prone to find the accused guilty of the charge for which he was being tried, solely because of his former bad record as a criminal. However, no such instruction was requested, but upon a retrial it is our suggestion that this point be clarified in the instructions to the jury.

■ There is also presented the contention that the evidence was not sufficient to show a former conviction against the accused. In that connection, the court clerk of Pontotoc County testified as a witness and identified an information filed against John Caudray and D. B. Caudray in the District Court of Pontotoc County on November 19, 1943, charging them with the

crime of assault with intent to kill by means of a certain pocket knife, and also identified judgment and sentence on plea of guilty against John Caudray wherein the prisoner was sentenced to serve 10 years in the penitentiary, and a sheriff's return on the judgment and sentence showing the transportation of the prisoner to the penitentiary. These exhibits were admitted in evidence without objection from counsel for the accused and no objection was presented to the court that the John Caudray was not the individual on trial charged as John Cordray. However, there is no presumption that a person charged and convicted under the name of John Caudray is the same person as the one who is being tried under the name of John Cordray. It would have been an easy matter of proof, if the individuals were the same, for the county attorney to have had them so identified. In the case of Pitzer v. State, 69 Okl.Cr. 363, 103 P.2d 109, it was held:

"In a prosecution for a second violation of the prohibitory liquor laws, the fact of a prior conviction being one of the material elements of the offense, the same must be proven by competent evidence beyond a reasonable doubt the same as all other material allegations of the information.

"Where, in a prosecution for a second violation of the prohibitory liquor laws, record evidence of a former conviction is offered of one of the same name as that of the defendant on trial, the same will be considered as strong circumstantial evidence that the person named in the former conviction and the defendant on trial are one and the same person; and where no contradictory evidence is introduced, the same will be held to be sufficient to show a prior conviction."

By reason of the foregoing, the judgment and sentence of the District Court of Pontotoc County is reversed and the case is remanded with instructions to again try the accused.

POWELL, P. J., and BRETT, J., concur.